AXELRAD, J.T.C.
In this state tax matter concerning the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 to :10-12, the taxpayer appeals the Director's June 5, 1998 Final Determination assessing additional tax and interest. The taxpayer contests the Director’s assessment on two grounds: First, the taxpayer contends that the *582 Final Determination was time-barred by N.J.S.A. 54A:9-4(a), which limits the time in which the Director may assess any tax under the Gross Income Tax Act to three years after the taxpayer’s return was filed. Second, the taxpayer argues that, even if the Director’s assessment was timely, the income taxed by the Director constituted an “employee death benefit” and is. explicitly excluded from gross income by N.J.S.A. 54A:6-4.
This matter is before the court on stipulated facts and briefs. R. 8:8 — 1(b). The following facts have been stipulated. Joyce H. Eiszner was a resident of Illinois during all of calendar year 1992. She is the widow of Dr. James Eisznpr, the former chief executive officer of CPC International, Inc. (“CPC”). Dr. Eiszner died on September 11, 1990. At the time of his death, Dr. Eiszner was a resident of New Jersey, was employed by CPC in New Jersey, and was a participant in the CPC 1984 Stock and Performance Plan and 1976 Stock Option and Performance Plan (the “Plan”).
Under the Plan, shares of CPC stock and stock appreciation rights are contingently granted to participants. Amounts actually received from the Plan' depend upon, among other things, the performance of the employee and CPC during the designated “Cycles.” The Plan provided that a participant must be an employee at the end of a Cycle in order to be entitled to a payment from the Plan. The Plan further provided that, if a participant left CPC by reason of voluntary separation, death, retirement, or disability prior to the end of a Cycle, CPC’s Compensating and Nominating Committee of the Board of Directors had absolute discretion as to whether or not a Plan payment would be made for such Cycle to the participant, his estate, or legal representative.
On September 18, 1990, subsequent to Dr. Eiszner’s death, the CPC committee of. directors voted to authorize a payment to Dr. Eiszner’s estate (the “Estate”) for the 1988 cycle. During 1992, the Plan paid $1,152,001 (the “1992 Plan Payment”) to the Estate for the 1988 cycle which ended on December 31,1991, more than a year after Dr. Eiszner’s death. According to the Plan’s terms, the CPC committee of directors was under no obligation to make the 19.92 Plan Payment, Dr. Eiszner: had no entitlement or right to the *583 1992 Plan Payment, and the 1992 Plan Payment would not have been paid to the Estate absent committee action.
The 1992 Plan Payment was made to the Estate and transferred to the Revocable Trust of Dr. James R. Eiszner (the “Trust”), which is a New Jersey Resident Trust. The Trust then distributed the monies to the taxpayer.
The Estate filed a Gross Income Tax Fiduciary Return, Form NJ-1041 - 1992 on June 9, 1993. The Trust filed a Gross Income Tax Fiduciary Return, Form NJ-1041 - 1992 on August 10, 1993.[1]
The taxpayer filed a Gross Income Tax — Non-Resident Return, Form NJ-1040NR - 1992 on August 10, 1993,[2] seeking to obtain a refund of a 1992 first quarter estimated tax payment that she claims she inadvertently made to New Jersey subsequent to relocating her residence to Illinois on July 10, 1991. Attached to the Non-Resident Return was her 1992 Illinois Individual Tax Return — Form IL-1040, to which was attached her “Supplement to Illinois” 1992 federal Form 1040 — U.S. Individual Income Tax Return. The taxpayer did not attach the 1992 New Jersey Estate or Trust Fiduciary Returns to her Individual 1992 Non-Resident Return.
On the taxpayer’s 1992 individual Non-Resident Return, she reported $1,069,213 on line 43 “Other — Nature and Source” under column A “Amount of Gross Income Everywhere.” Although the taxpayer did not identify the “Nature and Source” of the income as required by the return, it is undisputed that this figure is the 1992 Plan Payment less allocable expenses. The taxpayer’s total income, reflected on lines 44 and 14(a) and (c) was $1,886,680, which was also reported under Column A “Amount of Gross Income Everywhere.” The Non-Resident Return reported no *584 income from New Jersey sources (Column B) and no New Jersey tax due.
The taxpayer also reported $1,069,213 on her 1992 individual Federal Return on line 18 “Rents, royalties, partnerships, estates, trusts, etc. Attach Schedule E.” Contrary to the requirements of the return, no Schedule E was attached identifying this income. This figure was also included in the taxpayer’s adjusted gross income reported in her 1992 individual Illinois Return, and taxes were paid thereon.
The 1992 New Jersey Fiduciary Return for the Estate reported taxable “other income” described as “CPC International Inc ... Shares” in the amount of $766,688 and “CPC International Inc 1988 Performance Award” in the amount of $385,313, totaling $1,152,001. Income and dividends were added, resulting in total reported income of $1,168,853, which amount was distributed to the Trust as beneficiary. The 1992 New Jersey Fiduciary Return for the Trust reported that figure as income from the Estate and reflected a distribution to the taxpayer as beneficiary in the amount of $1,199,105 ($1,168,853 plus interest, dividends, and net gains or income from disposition of property). The Estate return set forth the taxpayer’s address, social security number, and her status as a non-resident of New Jersey.
The Director sent the taxpayer a Notice of Deficiency dated August 29, 1997, which asserted that the taxpayer was liable for 1992 New Jersey Gross Income Tax in the amount of $78,647 plus $45,108 in accrued interest calculated to October 15, 1997, based upon the CPC Performance Award payment in the amount of $1,152,001 from a New Jersey source. The taxpayer filed a protest dated November 25, 1997, in which she contested the assessment proposed in the Notice of Deficiency. The Director issued a Final Determination dated June 5, 1998, in which he asserted liability for 1992 Gross Income tax due in the amount of $55,647, plus accrued interest of $39,353.07 calculated to July 15, 1998. The Final Determination reflected credit for a $23,000 estimated tax payment previously made by the taxpayer. The taxpayer timely filed a complaint to this court.
*585 The parties have also stipulated that, if the Director prevails in this matter, the Director’s computation of the proposed assessment in the Final Determination would be correct.
N.J.S.A. 54A:9-4(a) of the Gross Income Tax Act provides that “[ejxcept as otherwise provided in this section, any tax under this act shall be assessed within 3 years after the return was filed.” The Division concedes that the assessment was made approximately four years after the taxpayer filed her tax return. Absent an exception provided by statute, because the Director’s assessment was made more than three years after the taxpayer filed her return, the Director would not have the authority to impose an assessment under the Gross Income Tax Act.
The Director argues that the three-year statute of limitations does not apply. Instead, the Director contends that the six-year statute of limitations as provided by N.J.S.A. 54A:9-4(d) applies. N.J.S.A. 54A:9-4(d) provides the following exception to the normal three-year statute of limitations under N.J.S.A. 54A:9-4(a):
Omission of income on return. The tax may be assessed at any time within 6 years after the return was filed if—
(1) An individual omits from his New Jersey income an amount properly includible therein which is in excess of 25% of the amount of New Jersey income stated in the return ...
For purposes of this subsection there shall not be taken into account any amount which is omitted in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the director of the nature and amount of such item, [emphasis added].
In the present case, the Director argues that, because the taxpayer indicated that she had no New Jersey Source Income, and an audit revealed that she had over one million dollars in New Jersey Source Income in that year, the 25% threshold figure provided in N.J.S.A. 54A:9-4(d) is met. The Director submits that the taxpayer did not adequately disclose the disputed income in her individual New Jersey Return or any attached statement, which, to the contrary, expressly reported in Column B that there was no New Jersey source income, and did not identify either the “nature” or “source” of the $1,069,213 income “everywhere” reported on line 43 in Column A. The Director further contends that he has no statutory duty to cross-reference the fiduciary returns, *586 which were different returns filed by a different entity, were hot identified as the source of the income by name or federal identification number, and were not attached to the taxpayer’s individual return. In addition, according to the Director, the Trust Return did not specify the nature of the income — it only reported that it received ordinary income from the Estate — and the Estate Return included reference to CPC shares and a CPC Performance Award under “Other Income” but listed the beneficiary as the Trust. As such, the Director submits that there was no disclosure of the omitted New Jersey income in the taxpayer’s returns which would have apprised the Director that the $1,069,213 amount listed as “Amount of Gross Income Everywhere” was New Jersey source income. Therefore, the six-year statute of limitations period under N.J.S.A. 54A:9-4(d) should apply.
Conversely, the taxpayer submits that the disclosure of the numerical amount of income on her individual Non Resident Return and her reporting of the income under “rents, royalties, partnerships, estates, trusts, etc.” on line 18 of her individual Federal Return, which was attached to her New Jersey Non Resident Return, constituted an adequate disclosure in a manner sufficient to apprise the Director of the omitted income. In addition, she submits that even though the New Jersey fiduciary returns weré not attached to her individual New Jersey NonResident Return, there was sufficient information contained in her return to enable the Division to cross-reference the fiduciary returns. Therefore, according to the taxpayer, the three-year statute of limitations period provided by N.J.S.A. 54:9-4(a) bars the Director’s assessment.
Consequently, the issue that this court must initially address is whether the taxpayer disclosed the disputed income “in the return, or in a statement attached to the return, in a manner adequate to apprise the director of the nature and amount of such item”'pursuant to the last paragraph of N.J.S.A. 54A:9-4(d). As part of this analysis, the court must determine whether the requirement of disclosure of the “nature” of the item is intended to encompass its “source.”
*587 There is no case law or other authority which interprets N.J.S.A. 54A:9-4(d). In fact, there are only four reported cases which reference N.J.S.A. 54A:9-4, none of which addresses or provides any guidance regarding the issue before this court.[3]
The taxpayer submits that, since the New Jersey statute is virtually identical to that of § 6501 of the Internal Revenue Code, this court should look for guidance to federal authorities interpreting the Code. In support of its position, the taxpayer cites, among other cases, Corporate Properties Investors v. Director, Div. of Taxation, 15 N.J.Tax, 14, 18 (Tax 1995), aff’d, 15 N.J.Tax 205 (App.Div.1995) (which states that “[s]inee the New Jersey Legislature borrowed from the operative terminology of the federal Internal Revenue Code in defining the New Jersey tax base of ‘entire net income’ ... this court may look to the Internal Revenue Code for guidance in defining those critical terms.”) and Koch v. Director, Div. of Taxation, 157 N.J. 1, 12, 722 A.2d 918 (1999) (where the Court cited a Connecticut case which interpreted a Connecticut statute similar to N.J.S.A. 54A:5-l(c)). The taxpayer submits that these interpretations would be instructive, particularly due to the lack of New Jersey authority addressing the issue before the court. Cooperstein v. Division of Taxation, 13 N.J.Tax 68, 82-83 (Tax 1993), aff’d, 14 N.J.Tax 192 (App.Div. 1994), certif. denied, 140 N.J. 329, 658 A.2d 728 (1995) (holding that, where there are no reported cases in this State construing a statutory phrase, a court can look to other jurisdictions having similar statutes employing similar language).
The Director submits that the New Jersey Legislature did not mimic the federal income tax law so that this court need not engraft federal interpretations of the Internal Revenue Code onto the State Gross Income Tax Act, citing Smith v. Director, Div. of Taxation, 108 N.J. 19, 527 A.2d 843 (1987). The Director urges *588 the court to give plain meaning to the clear and unambiguous language of N.J.S.A. 54A:9-4.
The language of N.J.S.A. 54A:9-4 is virtually identical to that of § 6501 of the Internal Revenue Code. Both provide that a tax must be assessed within three years after the return is filed and provide for an exception to the three-year statute of limitations. This Code section provides:
(e) Substantia) Omission of Items. Except as otherwise provided in subsection (e) [referring to other exceptions to the three year rule]
... [(1) text deleted]
(A) General Rule. — If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income slated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For the purposes of this subparagraph—
(ii) In determining the amount omitted from gross income, there shall not be talcen into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to appi-ise the Secretanj of the nature and amount of such item.
[.I.R.C. § 6501(e) (emphasis added).]
Although the question is factual and many cases, therefore, are distinguishable, an examination of the federal eases dealing with this issue may be instructive as they may provide guidelines and tests which are helpful in arriving at a factual conclusion. University Country Club, Inc. v. Commissioner, 64 T.C. 460, 470, 1975 WL 3178 (1975). Although it is clear that the Legislature intended to, and did, reject the substantive federal income tax model in favor of a gross income tax in order to avoid tax loopholes available under the federal tax laws, Smith v. Director, Div. of Taxation, supra, 108 N.J. at 32-33, 527 A.2d 843, the fact that the taxation models differ does not preclude the court from examining the case law interpreting I.R.C. § 6501(e). This examination is warranted because (1) the statutory language is similar, and (2) the statute of limitations for imposing assessments is part of the procedural law not included in the taxing model which the Legislature intended to differentiate. Such case law, however, is clearly not conclusive or binding on this court because there is no *589 indication that the Legislature intended to adopt federal tax concepts. Ibid.
It appears that the focus of many of the federal cases cited by the taxpayer is on the amount reported, i.e., the improper classification of the income or incorrect computation of tax based upon a difference in the legal construction to be applied to a disclosed transaction, rather than on a disclosure of the nature or source of the omitted income. The leading case is Colony, Inc. v. Commissioner, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed.2d 1119 (1958), where the omission resulted from the taxpayer’s reporting of land sales in which the taxpayer overstated its basis. The United States Supreme Court analyzed the legislative history of § 275 of the Internal Revenue Code of 1939 (the predecessor to I.R.C. § 6501(e)) and concluded that the purpose of the statute was to extend the statute of limitations to the restricted situation where, “because of a taxpayer’s omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors.” Id. at 36, 78 S.Ct. 1033. The Court established the basic test which was codified in I.R.C. § 6501(e)(1)(A)(ii) and held the extended statute of limitations would apply where:
[tjhe return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage
[Ibid, (emphasis added).]
See also University Country Club, Inc. v. Commissioner, supra, 64 T.C. at 469 (1975) (holding that, where a taxpayer accurately fills in “every blank space provided for his use in the income tax form, giving every ‘gross’ or maximum figure called for, and arrives at an incorrect computation of the tax” as a result of its analysis of the transaction, there is a sufficient clue to bar the extended statute of limitations).
In addition, in several of the federal cases cited by the taxpayer, the respondent conceded, or the courts ruled, that, in determining whether there was adequate disclosure, fiduciary income tax returns should be considered together or the corporate income tax return should be considered with the individual return. In many *590 of these cases, the audited return contained some indication of a relationship to a return which disclosed the claimed information or a schedule referencing the other entity and its federal tax identification number. See Benderoff v. United States, 398 F.2d 132 (8th Cir.1968); Quick’s Trust v. Commissioner, 54 T.C. 1336, 1347, 1970 WL 2316 (1970), aff’d per curiam, 444 F.2d 90 (8th Cir.1971). As a practical matter, the federal cases suggest a common sense approach to determine whether a taxpayer adequately disclosed the omitted item from income, i.e., whether the disclosure on the return provides a “clue” as to the omitted item. “[T]his does mean simply a ‘clue’ which would be sufficient to intrigue a Sherlock Holmes. But neither does it mean a detailed revelation of each and every underlying fact.” Quick’s Trust v. Commissioner, supra, 54 T.C. at 1347. What appears to be required, then, is that there be sufficient information available, given all the tax returns and disclosures referenced in the returns, “for the Commissioner to observe, heed, and investigate and a reasonable followup on such clue would lead to the adjustment that he ultimately made.” University Country Club, supra, 64 T.C. at 470.
In construipg a statute, the’ court must first consider its plain language. Where the words of a statute are clear and their meaning and application plain and unambiguous, there is no reason for judicial construction. Board of Educ. v. Neptune Township Educ. Ass’n, 144 N.J. 16, 25, 675 A.2d 611 (1996); Cumberland Holding Corp. v. Vineland City, 11 N.J.Tax 457, 462 (Tax 1991); 2A Sutherland Statutory Construction § 46.01 (5th ed.1992). The language of the statute at issue is clear, and common sense is the best guide to an interpretation of N.J.S.A. 54A:9-4(d).
The New Jersey statute, as does the Internal Revenue Code, expressly requires that disclosure in the return must be adequate to apprise the Director of both the nature and the amount of the omitted income. Since the state from which the income is derived is irrelevant in the federal taxing model, there is less of an emphasis in the federal cases on the “nature” component. On the other hand, the “nature” component of the New *591 Jersey statute has a significant impact, since the geographic source of the income is an integral part of this State’s taxing scheme. Furthermore, while the federal statute refers only to omitting amounts from “gross income,” the New Jersey statute, N.J.S.A. 54A:9-4(d)(1), expressly refers to amounts relating to New Jersey income. New Jersey’s statute plainly requires that more than just the amount be disclosed in the return. In order for this statute to make any sense in view of New Jersey’s ability to tax only income from a source within the State, the nature of the income must include its source.
It is apparent that this fact was recognized by the Director when he drafted the New Jersey Non-Resident Return which expressly required reporting, on line 43, of the amount, as well as the nature and source, of “other income.” Courts have recognized the Director’s expertise in the highly specialized and technical area of taxation. Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984). Consequently, the Director’s construction of the operative law, which is not plainly unreasonable and with which the Legislature has not interfered, has been entitled to prevail. Ibid.; Vavoulakis v. Director, Div. of Taxation, 12 N.J.Tax 318, 332 (Tax 1992), aff’d o.b., 13 N.J.Tax 322 (App.Div.1993). Here, the Director’s interpretation is not unreasonable and is consistent vshth the language and probable legislative intent of N.J.S.A. 54A:9-4(d). Thus, the interpretation should prevail. Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997).
The taxpayer expressly reported in Column B of her individual New Jersey Non-Resident Return that she had no New Jersey source income. The taxpayer did not identify either the nature or source of the $1,069,213 which she reported as “other income” on line 43 in Column A of her individual New Jersey Return, despite the express requirement of the return. The only mention of the Trust in the taxpayer’s return is in the attached statement to Part II which reports as income from disposition of property a $400 gain from the Trust, which the Director could reasonably infer was a separate source of income. Neither was *592 the required Schedule E attached to the taxpayer’s individual federal tax return which was submitted to the Division along with her New Jersey return, which would have identified the source of these funds. In fact, there was no information in the taxpayer’s Non-Resident Return, or in the attached Illinois or Federal Returns, that would make the Director believe the taxpayer had New Jersey source income, particularly where the taxpayer paid tax to Illinois on the funds. Simply by reporting a number on her individual Non-Resident Return under the non-New Jersey income category without any identification of what it is or what is its source, and listing the same amount in her attached federal return under the language of “rents, royalties, partnerships, estates, trusts, etc.” the taxpayer did not provide any notice to the Director that the funds are from the CPC Performance Award paid to the Trust and passed through the Estate, which finds are a source of New Jersey income.
In short, there was no attempt by the taxpayer to comply with the Director’s requirement of naming the nature and source of income, as well as the amount. There was nothing in the taxpayer’s individual returns that would alert the Director to conduct a further investigation or audit to determine if the funds were from a New Jersey source. This omission places the Director at a great disadvantage and imposes a significant burden on the State to locate the source of these funds, which is the reason for the Legislature’s extending the statute of limitations an additional three years.
Furthermore, the Director’s position is correct that the Legislature did not require the Director to cross-reference different returns filed by a different entity which were not attached to the taxpayer’s individual return. N.J.S.A. 54A:9-4(d) clearly specifies that omitted New Jersey income must be adequately disclosed “to the [taxpayer’s] return” or in “a statement attached to the return” in order for the shorter statute of limitations to apply (emphasis added). The fiduciary Estate and Trust returns were for separate entities, were separately filed, and were neither attached to the taxpayer’s individual returns nor identified as the *593 source of the income by name or federal identification number. Even if the court considered the fiduciary returns, they provided inadequate disclosure. The Trust Return did not specify the nature of the income — it only reported that the Trust received ordinary income from the Estate — and the Estate Return included reference to CPC, International shares and a CPC, International Performance Award under “Other Income,” but listed the beneficiary as the Trust.
The court finds that there was inadequate disclosure; in fact, there was no disclosure of the source or nature in the taxpayer’s individual State Return or her attached Illinois or Federal Returns, despite her full disclosure of the amount. The taxpayer provided no information that would have apprised the Director that the $1,069,213 amount listed as “Amount of Gross Income Everywhere [except New Jersey]” was New Jersey source income. Therefore, the six-year statute of limitations provided by N.J.S.A. 54A:9-4(d) applies, and the Director’s initial assessment of August 29, 1997 is not barred by the three-year statute of limitations provided by N.J.S.A 54A:9-4(a).
As a result of the preceding ruling, the court must determine the substantive issue of whether the income taxed by the Director constituted an employee death benefit which is explicitly excluded from gross income by N.J.S.A. 54A:6-4b.
The New Jersey Gross Income Tax Act, N.J.S.A 54A:1-1 to :10-12, imposes a tax on the New Jersey gross income of all individuals, estates, and trusts. N.J.S.A. 54A:2-1. New Jersey gross income includes “bonuses, and other remuneration received for services rendered whether in cash or in property,” N.J.S.A. 54A:5-1a, as well as “income derived through estates or trusts,” N.J.S.A. 54A:5-1h, and “[i]ncome in respect of a decedent,” N.J.S.A. 54A:5-1i.
With regard to an individual who is a non-resident of New Jersey, income from New Jersey sources is defined as including income from the categories of gross income listed and classified in N.J.S.A. 54A:5-1 through 54A:5-14, “to the extent that it is *594 earned, received or acquired from sources within this State .... [i]n connection with a trade, profession, occupation carried on in this State or for the rendition of personal services performed in this State.” N.J.S.A. 54A:5-8a and -8a(2); N.J.S.A. 54A:5-5 (repealed by L.1993, c. 178, § 5 and replaced, beginning tax year 1993, with N.J.S.A. 54A:2-1.1). The definition of income received “in connection with an occupation” is to be broadly construed. McDonald v. Director, Div. of Taxation, 10 N.J.Tax 556, 578 (Tax 1989), aff’d, 247 N.J.Super. 326, 589 A.2d 186 (App.Div.1991).
Certain income is specifically excludable from gross income. The statute provides that “[ejmployees’ death benefits, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee,” are excluded from gross income. N.J.S.A 54A:6-4b. The Gross Income Tax Act does not define “death benefits.” Since there is no case law or other authority interpreting N.J.S.A. 54A:6-4b, the taxpayer again urges the court to look to the authorities interpreting former Section 101(b)(1) of the Internal Revenue Code (which was repealed by the Small Business Job Protection Act of 1996, P.L. 104-188, Title I, § 1402(a), August 20, 1996, 110 Stat. 1789). The taxpayer points to the fact that the 1992 Plan Payment for the Cycle Year 1988 was forfeitable during Dr. Eiszner’s life if he was not an employee at the end of the Cycle and, unlike accrued salary or other benefits to which Dr. Eiszner may have had an absolute vested entitlement, the CPC committee had no legal obligation to pay the Performance Award after he died. As such, the taxpayer submits the Performance Award is an employee’s death benefit which is excludable from the Estate’s, Trust’s, and, ultimately, the taxpayer’s New Jersey income.
There is no reference at all in N.J.S.A. 54A:6-4 to federal income tax concepts in connection with New Jersey’s exclusion of employee death benefits from gross income, nor has the taxpayer presented any evidence that the Legislature intended to incorporate the employee death benefit provisions of the Internal Revenue Code in the Gross Income Tax Act. See Smith v. Director, Div. of Taxation, supra, 108 N.J. 19, 527 A.2d 843. Moreover, the *595 exclusion of income from certain benefits received by an employee is defined quite differently in the Internal Revenue Code. Although former Section 101(b)(1) of the Code states that “amounts paid by or on behalf of an employer and ... paid by reason of the death of the employee” are excluded from tax, subparagraph (b)(2)(B) further qualifies this “general rule” by stating that the exclusion from income does not apply “to amounts with respect to which the employee possessed, immediately before his death, a nonforfeitable right to receive the amounts while living.” The New Jersey Gross Income Tax Act has no similar focus on the forfeitability of benefits.
The Federal exclusion of “employee death benefits” is, accordingly, broader than the State exclusion. However, the Federal statute balances the revenue lost from such a broad provision by permitting only an exclusion to the amount of $5,000. As such, the provision is of minimal impact on Federal tax revenues generally.
 This court is not bound by, nor does it find guidance in, the Federal rulings relied on by the taxpayer. The New Jersey Gross Income Tax “is a simplified tax imposed upon gross income as defined in the act less only those deductions specifically excluded or deferred therein by chapter 6.” Mutch v. Div. of Taxation, 9 N.J.Tax 612, 616 (Tax 1988), aff’d o.b., 11 N.J.Tax 87 (App.Div.1989). Exclusions from gross income should be construed narrowly. Ibid. Indeed, since the receipt of taxes is necessary to the very functioning of government, “[exemptions from taxation represent a departure and consequently they are most strongly construed against those claiming exemption.” Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 320, 526 A.2d 1029 (1987), aff’d, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989) (internal quotations and citations omitted).
As previously stated, where a statute is clear on its face, the court should be guided by common sense and should give the words their ordinary and generally understood meaning. N.J.S.A, 54A:6-4, titled “Certain death benefits,” is comprised of two *596 paragraphs which provide for exclusions from gross income for: (a) “[p]roceeds of life insurance contracts payable by reason of death ” and (b) “[e]mployees’ death benefits, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee” (emphasis added). From the placement of these two provisions together in a statute entitled “Certain death benefits,” it is reasonable to infer that the Legislature viewed [“e]mployees’ death benefits”' as related to [“proceeds of life insurance contracts” and that [“e]mployees’ death benefits” are life insurance-like benefits provided by an employer to an employee. Furthermore, there is a similarity of language; both are paid by reason of “death.” As such, they represent the same concept, except for .the payor. Under the first paragraph, the death benefit is paid pursuant to a life insurance policy while, under the second, it is paid pursuant to an employment agreement on benefits funded other than by an insurance policy. It makes sense that the Legislature would provide that these similar sources of death benefits would both be treated as exclusions from gross income, to avoid the anomalous situation where death benefits paid by a life insurance policy would be nontaxable while death benefits paid from a fund created by the employer would be taxable.
The court finds that the Performance Award made by CPC to the Estate, which passed through to the Trust and, in turn, passed through to the taxpayer, cannot properly be classified as an “employee death benefit” under N.J.S.A 54A:6-4. The payment was not made by reason of the death of the employee, Dr. Eiszner, but, rather, as a result of his participation in the Plan for some of the years in the relevant Cycle and the performance of CPC during those years. Furthermore, the CPC Plan permits payment of a Performance Award under circumstances other than the death of an employee. Section 4.5 of the Plan, entitled “Termination of Employment,” provides:
[I]n the event a Participant ceases to be an Employee with the consent of the Committee before the end of such Cycle, or in the event of his death or the occumnce of his Normal Retirement Date ... or Disability Date prior to the end of such Cycle, the Committee, ... may authorize the payment of such Participant (or his legal representative) at the end of the Cycle of all or any portion of the *597 Performance Award which would have been paid to him for the Cycle. (Emphasis added.)
Death does not trigger the payment, as it would a life insurance policy or similar benefit funded otherwise, but merely triggers consideration by the committee of whether to authorize the payment. Death is only one of the employment-terminating factors which activates consideration by the board of this post-employment discretionary benefit. There are a variety of other circumstances in which the committee could award these funds to its employee or legal representative. The committee would have the same discretion to authorize payment of the Performance Award upon Dr. Eiszner’s death as it would have had if he had retired, become disabled, or voluntarily left CPC before the end of the Cycle. The payment is not converted to a death benefit simply because Dr. Eiszner died during the Cycle. As the Performance Award could be paid to any participating employee who separated from the company by reason of retirement, disability, or even voluntary separation, as well as death, it retains its character as deferred compensation under an incentive compensation plan, for years worked by the decedent.
The Performance Award made by CPC to the Estate, which passed through to the Trust, and, in turn, passed through to the taxpayer, is income attributable to services rendered by Dr. Eiszner to his employer during the years 1988, 1989, and 1990.[4] Dr. Eiszner earned this compensation under an incentive compensation plan, from CPC, a New Jersey source. As the Performance Award was made in connection with the decedent’s occupation and personal services rendered in New Jersey and was not properly excluded under other provisions of the Gross Income Tax Act, the payment retains the same character in the hands of the taxpayer *598 as it had in the hands of the Estate or Trust, and is includable in the taxpayer’s gross income and subject to tax.
As such, the Director’s Final Determination will be affirmed, and judgment will be entered accordingly.

 Although the Stipulation of Facts indicates that the return was filed on August 10, 1993, since that was the date next to Joyce Eiszner's signature, the return is stamped as being received by Returns Processing, Division of Taxation on August 9, 1993.

 The return is stamped as being received by Returns Processing, Division of Taxation on August 16, 1993.

 Sharps, Pixley, Inc. v. Director, Div. of Taxation, 16 N.J.Tax 626 (Tax 1997); Schiff v Director, Div. of Taxation, 15 N.J Tax 370 (Tax 1995); Stelnik v Director, Div of Taxation, 13 N.J.Tax 141 (Tax 1993); Gordon v Taxation Div. Director, 5 N J Tax 630 (Tax 1983).

 In accordance with the State Tax News, Vol. 12, No. 5, p. 131 (September/October 1983), "[a] beneficiary's income that is derived from a resident estate or trust retains the same character in the hands of the beneficiary as in the hands of the estate or trust." Accordingly, the beneficiary is taxed only from income from the trust that is from New Jersey sources. In this case, ihe payment retains its character as New Jersey source income when the Trust in turn passes the funds through to the taxpayer.