BIANCO, J.T.C.
This is the court’s opinion with regard to the motion for partial summary judgment[1] filed by plaintiffs Mark DiStefano and Margaret DiStefano (hereinafter “the DiStefanos” collectively, and *611 “Mr. DiStefano” or “Mrs. DiStefano” individually). The defendant Director, Division of Taxation (hereinafter “Director”) objects on all points and maintains the issues are not ripe for adjudication. For the reasons set forth below, partial summary judgment is granted in favor of the DiStefanos.
The facts are as follows:
For the disputed 1999 tax year, the DiStefanos filed a joint New Jersey Form NJ-1040 Resident Income Tax Return. Both Mr. DiStefano and Mrs. DiStefano are plaintiffs in this matter since they filed a joint return. For purposes of the pending motion, all issues relate solely to Mr. DiStefano’s individual interest in Nova. Corp., a corporation organized under the laws of New Jersey.
In 1999, Mr. DiStefano was a ninety percent shareholder and chief executive officer of Nova.Corp. The remaining ten percent of Nova.Corp. was owned by a trust for the benefit of Mr. DiStefano’s two daughters. During tax year 1999, Nova.Corp. was engaged in the business of engineering design, project management, and construction management services, specializing in data centers and other similar facilities. Nova.Corp. conducted this business in New Jersey as well as in Arizona, California, Connecticut, Georgia, Illinois, Massachusetts, New York, Virginia, and in some foreign countries.
The parties have stipulated that Nova.Corp. was a S corporation for New Jersey (see N.J.S.A. 54A:5-10) and federal purposes (see I.R.C. § 1361), and a C corporation in New York (see N.Y. Tax Law § 208) during the tax year at issue.
On its original 1999 New Jersey Corporation Business Tax (hereinafter “CBT”) return, Form CBT-100S, Nova.Corp. omitted the information on Schedule J that is required to determine the allocation factor used to allocate income to New Jersey. As a result of this mistake, one-hundred percent of Nova.Corp.’s total income was allocated to New Jersey. This is because one-hundred percent of business income is allocated to New Jersey by default, absent a showing that the corporation maintained a regular place of business outside of New Jersey. See N.J.S.A. 54:10A-6. Nova.Corp. had taken a credit for taxes paid to other jurisdictions because it had conducted business and paid taxes in other states. *612 See N.J.A.C. 18:35-4.1(a)(3)(ii)(1); see also Form CBT-100S— 1999, line 8; and Form CBT-100S — 1999, Instructions for S Corporation Business Tax Return, Instruction 26(a).
For tax year 1999, Nova.Corp. paid corporate income taxes to California, Illinois, Massachusetts, New Jersey and New York. On its 1999 Form CBT-100S, Nova.Corp. claimed credits ($80,005) against its CBT liability (two percent of $21,489,152) in New Jersey for the taxes paid to those above-listed states.
Nova.Corp. distributed $6,318,500 to Mr. DiStefano in 1999. However, for both the federal income and New Jersey Gross Income Tax (hereinafter “New Jersey GIT”) purposes, Mr. DiStefano’s pro-rata share of Nova.Gorp.’s income for 1999 was reported as $19,340,003.[2] The difference between cash received and income recognized arose because Nova.Corp. was a “pass-through” entity for New Jersey CBT purposes. Shareholders must recognize their pro-rata share of S corporation income, even if they did not actually receive the income during the tax year.[3] Mr. DiStefano’s pro-rata share for 1999 was $19,340,003. Mr. DiStefano individually paid taxes to Arizona, California, Georgia, Illinois, Massachusetts, New Jersey, and Virginia based upon his 1999 income from Nova.Corp. Nova.Corp.’s office manager, Judith Florio, filed the DiStefanos’ original 1999 Form NJ-1040 resident personal return by certified mail on October 16, 2000[4] (“the original tax return”). On the original tax return, the DiStefanos claimed credits for the amount of taxes paid to Arizona, California, Georgia, Illinois, Massachusetts, and Virginia. However, since the DiStefanos, as personal taxpayers, had not yet paid any taxes to *613 New York on the date the original tax return was filed, no credits were claimed on the original tax return with respect to taxes paid to New York.
Subsequent to filing the original tax return, an audit conducted by the New York Department of Taxation and Finance determined that the DiStefanos as statutory residents of New York, owed taxes to the State of New York totaling $31,283.86, and taxes of $886.61 as nonresidents of New York City.[5] Thereafter, on or about January 9, 2003, the DiStefanos filed an amended 1999 New Jersey tax return (hereinafter “the amended tax return”) in which they claimed a credit of $31,284 for taxes paid to New York State as a result of the New York audit.[6]
On October 20, 2003 (three years and four days after the DiStefanos filed the original tax return on October 16, 2000), the Director issued a notice of deficiency (hereinafter “the notice”) which assessed additional tax, interest and penalties to the DiStefanos totaling $320,504 for the 1999 tax year. The additional assessment resulted from the Director’s re-computation of the amount of credit for taxes paid by Mr. DiStefano to California, Illinois, Massachusetts and New York, and from the Director’s disallowance of any credits for taxes paid by Mr. DiStefano to Arizona, Georgia, and Virginia. Except for the re-computation of the New York credit by the Director, all of the adjustments in the notice were related to the credits the DiStefanos originally claimed on the original tax return.[7] None of the original credits claimed by the DiStefanos were revised on the amended return.
*614 On November 13, 2003, the DiStefanos protested the notice and denial of the refund claim. The Director issued a final determination letter dated December 8, 2004 (the “Final Determination”), which denied the 1999 refund claim, affirmed the assessment for 1999 and imposed additional interest and a late payment penalty.[8]
The DiStefanos appealed to the Tax Court and the pending motion ensued. The DiStefanos contend that the Director failed to issue the notice within the three-year statute of limitations (computed from the filing date of the original tax return) as prescribed by N.J.S.A. 54A:9-4(a). In the alternative, should the court find the notice timely, the DiStefanos dispute the Director’s reasoning for denying the New York tax credit. Specifically, the DiStefanos dispute whether the Director may deny a taxpayer the benefit of the resident tax credit, N.J.S.A. 54A:4-1(a), on the basis that the entity generating the revenue is a S corporation in New Jersey and a C corporation in another taxing jurisdiction, here New York state.
In response, the Director argues that the notice for the 1999 tax year was timely issued. The Director contends that the applicable three-year statute of limitations in N.J.S.A. 54A:9-4(a) begins to run when the amended tax return is accepted by the Division of Taxation. Moreover, the Director asserts that New Jersey case law provides support for extending the statute of limitations period upon the filing of an amended tax return, relying primarily upon Hapag-Lloyd, A.G. v. Director, Div. of Taxation, 8 N.J.Tax 323 (App.Div.1986). Accordingly, the Director argues that the *615 Tax Court’s decision in Hapag-Lloyd should be read to mean that the filing of an amended tax return extends the limitation period.
Alternatively, the Director argues that the six-year statute of limitations period provided in N.J.S.A. 54A:9-4(d) applies. In support of this argument the Director relies on Eiszner v. Director. Div. of Taxation, 18 N.J.Tax 579 (2000), aff'd 19 N.J.Tax 498 (App.Div.2001) for the proposition that the six-year statute of limitations applies when the initial tax return excludes pertinent information.
Summary Judgment.
The court finds that the matter is ripe for partial summary judgment.
Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2; Brill v. Guardian Life Insurance Company of America, 142 N.J. 520, 666 A.2d 146 (1995). The importance of summary judgment is “not only to save antagonists the expense of protracted litigation, but also to reserve judicial manpower and facilities to cases which meritoriously command attention.” Id. at 542, 666 A.2d 146. “The express import of the Brill decision was to ‘encourage trial courts not to retrain from granting summary judgment when the proper circumstances present themselves.’ ” Howell Tp. v. Monmouth County Bd. of Taxation, 18 N.J.Tax 149, 153 (1999) (quoting Brill, supra, 142 N.J. at 541, 666 A.2d 146). See also Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 916 A.2d 440 (2007). Pursuant to R. 4:46-2, a summary judgment or order, interlocutory in character, may be rendered on any issue in an action although there is a genuine factual dispute as to any other issue.
The Director contends that there is a “dispute concerning whether Nova.Corp. maintained a regular place of business outside of New Jersey. According to the Director, this determination has a direct bearing on the underlying substantive issues in the TGI [Gross Income-Individual taxes] case ...” Despite this contention, the court finds that there are no material facts in dispute. While the Director may be correct that the disputed fact may be *616 material to the computation of credits, that fact is not material to the determination of the statute of limitations issue. Since the 1999 tax year can be disposed of on the statute of limitations issue alone, partial summary judgment is appropriate.
Analysis.
The applicable limitation period pertaining to any claim of deficiency by the Director for New Jersey GIT purposes is governed by N.J.S.A. 54A:9-4, which provides in pertinent part:
(a) General. Except as otherwise provided in this section, any tax under this act shall be assessed within. 3 years after the return was filed (whether or not such return was filed on or after the date prescribed).
(b) Time return deemed filed.
(1) Early return. For purposes of this section a return of income tax, except withholding tax, filed before the last day prescribed by law or by regulations promulgated pursuant to law for the filing thereof, shall be deemed to be filed on such last day.
(Emphasis added).
Additionally, subsection (d) provides a six-year statute of limitations when an amount in excess of twenty-five percent of stated total income is omitted by the taxpayer. N.J.S.A. 54A:9-4(d).
The issue before this court is one of first impression. It is unsettled under New Jersey law whether the three-year limitation period for deficiency notices set forth in N.J.S.A. 54A:9-4(a) runs solely from the date of the filing of the original tax return, or whether that limitation period is tolled upon the filing of an amended tax return. The court has found no published New Jersey court opinion or statute clarifying the issue.
Generally, “interpretation of a statute begins with its plain language, which is to receive its ordinary meaning as long as there is no indication that the Legislature had a different intent.” Campo Jersey, Inc. v. Director, Div. of Taxation, 390 N.J.Super. 366, 380, 915 A.2d 600 (App.Div.2007), citing Koch v. Director, Division of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999); Merin v. Maglaki, 126 N.J. 430, 434-35, 599 A.2d 1256 (1992). “If the statute admits of more than one interpretation, it is to be interpreted in light of the Legislature’s general intention, without undue emphasis on any particular word.” Campo Jersey, Inc., *617 supra, 390 N.J.Super. at 380, 915 A.2d 600, citing Koch, supra, 157 N.J. at 7, 722 A.2d 918. “It is a fundamental maxim that the opinion as to the construction of a regulatory statute of the expert administrative agency charged with the enforcement of that statute is entitled to great weight and is a ‘substantial factor to be considered in construing the statute.’ ” New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575, 384 A.2d 795 (1978) (citing Youakim v. Miller, 425 U.S. 231, 235, 96 S.Ct. 1399, 1402, 47 L.Ed.2d 701 (1976)). In the present matter, the Director’s regulations are completely silent on this issue. See, e.g. N.J.A.C. 18:2-2.6.
In the absence of any legislative history or regulations, interpretations from other jurisdictions can, and often do, provide guidance and assistance in interpreting New Jersey statutes. See James Constr. Co. v. Director, Div. of Taxation, 18 N.J.Tax 224, 234 (1999); see also Corporate Property Investors v. Director, Div. of Taxation, 15 N.J.Tax 14, 18 (1994), aff'd, 15 N.J.Tax 205 (App.Div.1995) (stating that “[s]ince the New Jersey Legislature borrowed from the operative terminology of the federal Internal Revenue Code ... this court may look to the Internal Revenue Code for guidance in defining those critical terms.”).
The three-year statute of limitation period applicable to federal returns, I.R.C. § 6501, and the three-year statute of limitation applicable to New Jersey Gross Income Tax returns, N.J.S.A. 54A:9-4(a), are virtually identical.[9] See Eiszner v. Director, Division of Taxation, 18 N.J.Tax 579, 588 (2000), aff'd 19 N.J.Tax 498 (App.Div.2001) (stating that “[t]he language of N.J.S.A. 54A:9-4 is virtually identical to that of § 6501 of the Internal Revenue Code.”)
*618 The United States Supreme Court in Badaracco v. Commissioner of Internal Revenue analyzed I.R.C. § 6501, the federal three-year limitation period. The Court observed that this section “establishes a general 3-year period of limitations ‘after the return was filed’ for the assessment of income and certain other federal taxes,” Badaracco v. Commissioner of Internal Revenue, 464 U.S. 386, 388, 393, 104 S.Ct. 756, 759, 762, 78 L.Ed.2d 549, 554, 558 (1984). Noting, however, that “the filing of an amended return in a non-fraudulent situation does not serve to extend the period within which the Commissioner may assess a deficiency.” Badar-acco v. Commissioner of Internal Revenue, supra, 464 U.S. at 393, 104 S.Ct. at 762, 78 L.Ed.2d at 558.
For the latter proposition, Badaracco, ibid, cited Zellerbach Paper Co. v. Helvering, in which the U.S. Supreme Court had earlier held that “a second return, reporting an additional tax, is an amendment or supplement to a return already upon the files, and being effective by relation does not toll a limitation which has once begun to run.” Zellerbach Paper Co. v. Helvering, 293 U.S. 172,180, 55 S.Ct. 127,131, 79 L.Ed. 264, 269 (1934).
Similarly, other jurisdictions have held that the filing of an original tax return is the only type of tax return that commences the running of the limitations period. For example, the Court of Appeals of Missouri held “the original return is the operative return for purposes of the period of limitations. The amended return does not extend the statute.” The court later clarified, “[t]his is so even though at the time of the filing of the original return omissions or inaccuracies exist as to make amendment necessary.” Campbell v. Director of Revenue, 927 S.W.2d 452, 455 (Mo.Ct.App.1996).
The Court of Appeals of Maryland has held that “ ‘the Maryland provision parallels the federal limitations provision and that it [is] practicable to apply the federal interpretation and create continuity between the two tax systems.’ ” The court therefore held that the applicable statute of limitation period begins to run after the original tax return is filed, and is unaffected by the filing of an *619 amended return. Comptroller v. Kolzig, 375 Md. 562, 826 A.2d 467, 474 (2003) (citation omitted).
The Tax Court of Indiana stated that “[t]he statute of limitations runs from the due date of the original return or the payment of taxes, whichever is later and not from the filing date of the amended return.” UACC Midwest, Inc. v. Indiana Dept. of Revenue, 629 N.E.2d 1295,1301 (Ind.Tax 1994).
The New York Division Tax Appeals Tribunal stated “ ‘[i]t is well settled that when a taxpayer files an original return and thereafter an amended return, the statute of limitations begins to run from the date of the original return, and not the date of the filing of the amended return.’ ” In re George and Carol Bello, No. 806543, 1993 WL 275983, at *12 (N.Y.Tax.App.Trib.1993) (citing Dowell v. Commissioner, 68 T.C. 646, 649, 1977 WL 3599, rev’d on other grounds, 614 F.2d 1263 (C.A.10 1980), and then adopting federal law as the law of the state).
In addition, the State of Arizona General Tax Ruling GTR 99-1 states that “[a]n amended return does not have a separate statutory life from that of the original return ... ‘... the statute of limitations starts to run in connection with the filing of the original return and its running cannot in any way be affected or suspended by the later filing of amended returns.’ ” Arizona General Tax Ruling GTR 99-1 (citing Ira Goldring v. Commissioner, 20 T.C. 79,1953 WL 218 (1953)).
This court is persuaded by the sound reasoning and interpretations provided under federal case law as well as the case law of other jurisdictions that have found the three-year limitations period for deficiency notices begins to run from the date of the original tax return and not from the date of the amended return. Accordingly, this court finds that the word “return” as used in N.J.S.A. 54A:9-4(a), refers to the original tax return and not to any subsequent amended returns.
In the present matter, the original tax return was mailed on October 16, 2000 and received by the Director on October 17, 2000. The amended tax return was filed on or about January 9, 2003. The Director sent the notice for the tax year 1999 on October 20, *620 2003, more than three years after the original tax return was mailed to and received by the Director. Unless some exception to N.J.S.A. 54A:9-4(a) is applicable under the present facts, the three-year statute of limitation bars the Director’s October 20, 2003 deficiency assessment.
The purpose of the statutes of limitation in tax matters, such as the three-year period contained N.J.S.A. 54A:9-4(a), “is to establish finality in the assessment process.... ” Godwin Pumps of America v. Director, Div. of Taxation, 19 N.J.Tax 325, 327, fn. 1 (2001); see also Bonanno v. Director, Division of Taxation, 12 N.J.Tax 552, 556 (1992) (“[statutes of limitations in tax statutes are strictly construed in order to provide finality and predictability of revenue to state and local government.”).
Furthermore, the Director is adequately protected by virtue of the exceptions contained in N.J.S.A. 54A:9-4(c), which extends the statute of limitations period when a false or fraudulent return is filed with intent to evade tax, no return is filed, a change or correction increasing a taxpayer’s federal taxable income is not reported, or the exception contained in N.J.S.A. 54A:9-4(d) when there is an omission from a taxpayer’s New Jersey income an amount properly includible therein which is in excess of twenty-five percent of the amount of New Jersey income stated in the return. None of these exceptions apply here.
This court is not persuaded by the Director’s reliance on Hapag-Lloyd as the facts in that case and the facts in the present matter are dissimilar and distinguishable. Hapag-Lloyd involved the limitation period under the Sales and Use Tax Act (specifically N.J.S.A. 54:32B-27(b)) and not the limitation period under the New Jersey GIT now at issue before this court (albeit the limitation language is substantially similar in both statutes). Furthermore, unlike the DiStefanos, the taxpayers in Hapag-Lloyd never filed an original tax return which was subsequently amended by the filing of an amended tax return. This is because the taxpayer in Hapag-Lloyd (a shipping company) believed it did not need to file a Sales and Use Tax return, since its vendors filed the appropriate Sales and Use Tax returns as permitted by statute *621 (N.J.S.A. 54:32B-14(b)). When the Director sought a Sales and Use Tax deficiency against the taxpayer in Hapag-Lloyd (which the Director had the right to do under N.J.S.A. 54:32B-22(a)), the taxpayer asserted that the limitation period had run based upon the returns filed by its vendors.
While the Director cites Hapag-Lloyd for the proposition that the statute of limitations is tolled upon filing the amended tax return, the decision in Hapag-Lloyd is more supportive of the DiStefanos case than the Director’s, since the case only addresses the limitation period in relation to the filing of an initial tax return and not an amended tax return. In Hapag-Lloyd, a Sales and Use Tax deficiency assessment was held to be within the statute of limitations period since the taxpayer had not filed a tax return. The court stated, “[h]ere, as a condition precedent to the accrual of the statute of limitations [N.J.S.A. 54:32B-27(b) ] a return must be filed. It was incumbent upon plaintiff to file a return.” Hapag-Lloyd, A.G., supra, 8 N.J. Tax at 326. (Emphasis added.) Clearly the court in Hapag-Lloyd only addressed the accrual of the limitation period from the filing of a return; it did not address the tolling of the limitation period upon the filing of an amended tax return.
Finally, the six-year statute of limitations provided by N.J.S.A. 54A:9-4(d) is inapplicable in the present matter. This subsection operates quantitatively and is only applied in the event of an omission of income on the tax return in excess of twenty - five ‘percent. The Eiszner case relied upon by the Director did not expand on this statutory position. In that case, an amount in excess of twenty-five percent of income was omitted from the original tax return.[10] In contrast, the present matter pertains to an additional tax credit which the DiStefanos claimed on their amended tax return, and not to income omitted from the original tax return. In fact, the New York tax credit was not even known to the DiStefanos on the filing date of the original tax return to *622 have been included in that return. Moreover, assuming arguendo that the New York credit was in fact an omission of income, that omitted income would fall well below twenty-five percent required by N.J.S.A. 54A:9-4(d). In fact the $31,284 New York tax credit is less than one percent of the $19,340,003 income figure.
N.J.S.A. 54A:9-4(a) binds the Director to issuing a notice of deficiency “within three years after the [original] return was filed”, subject to the limited exceptions discussed above. Under the present facts, subsection (d) of that statute does not operate to extend that three-year limitations period. The court observes that measuring the three-year limitation period from the filing of the original tax return, may in some instances, leave the Director with a short period of time in which to assert a deficiency based on an amended tax return filed in good faith. Nevertheless, the means to prevent such a result are better left within the purview of the Legislature and not assumed by this court.[11] While the Legislature specifically provided certain exceptions for extending the three-year limitations period,[12] it did not provide a statutory exception to extend the statute of limitations set forth in N.J.S.A. 54A:9-4(a) under the facts of the present matter.[13]
*623 The tax court in Hapag-Lloyd, A.G., v. Director, Division of Taxation, 7 N.J.Tax 108, 113 (1984), while acknowledging a harsh result for a taxpayer recognized that, “judicial restraint prevents [the court] from taking any action other than following the cleat-words of the statute.” The same reasoning holds true as applied to the Director under the current facts.
The Issue as to the New York Foreign Credits Need Not Be Decided.
The DiStefanos argue that if the notice is found to be timely, then the grounds for the Director’s denial of the credit for taxes paid to New York in 1999 were improper. However, since this court determined that the notice was untimely, the Director’s grounds for the denial of the New York credit in the notice is moot.
Conclusion.
The three-year statute of limitations period provided by N.J.S.A. 54A:9-4(a) begins to run upon the filing of the original tax return, and is not tolled by a taxpayer’s subsequent filing of an amended tax return. The term “return” as used by the Legislature in N.J.S.A. 54A:9-4 refers only to a taxpayer’s original tax return. This opinion is consistent with the holdings of various courts in several of our sister states as well as the federal courts. This court finds no reason to render a decision contrary to their collective wisdom. The notice is voided and abated.
Accordingly, the Director shall refund to the DiStefanos any overpayment of taxes due for the 1999 tax year with statutory interest computed thereon. Pursuant to It. 8:9-3, the parties shall submit computations consistent with this determination, showing the correct final amount of the DiStefanos’ overpayment and *624 computed interest for the 1999 tax year. Should the parties be unable to agree, then the court shall resolve the dispute pursuant to R. 8:9-4.
For the reasons set forth hereinabove, partial summary judgment is granted in favor of the DiStefanos. Once computations have been accepted or determined by the court under the stated rules, the Tax Court Administrator/Clerk shall enter judgment in accordance with this opinion.

 The relief sought affects only the 1999 tax year, which explains why the motion is for partial summary judgment. There are other tax years in dispute which will not be affected by the court's opinion herein.

 The DiStefanos' brief stated the income number as $29,340,003. This was apparently a typographical error.

 "Gross income of a shareholder. In any case where it is necessary to determine the gross income of a shareholder for purposes of this title, such gross income shall include the shareholder's pro rata share of the gross income of the corporation." I.R.C § 1366(c). New Jersey follows the federal definition for S corporation income. See N.J.S.A. 54A:5-10.

 The date of filing is the date that the tax return is mailed. N.J.S.A. 54:49-3.1(a).

 Both New Jersey and New York considered the DiStefanos to be residents for tax purposes. While the DiStefanos physically lived in New Jersey in 1999 and filed only a New Jersey resident lax return, they were, nonetheless, deemed statutory residents of New York pursuant to the audit conducted by the New York Department of Taxation and Finance.

 The Director acknowledged receipt of the amended return on January 16, 2003. The court observes that the amended return shows a New York return address for the DiStefanos.

 Each credit is calculated independently. The credits claimed on the original tax return were not affected by the New York credit taken on the amended tax *614 return. Additionally, the Director makes no claim that the New York credit affects any of the other credits.

 On August 23, 2004, Nova.Corp., a party in a separate tax appeal that is not consolidated with the present matter, filed an amended Form CBT-100S corporate return for tax year 1999 in order to claim that it maintained a regular place of business outside of New Jersey and was entitled to allocate its income outside New Jersey. The Director denied Nova.Corp.'s requests for a refund in connection with its amended returns based upon the determination that the second amended return for tax year 1999 was filed "beyond the statute for consideration” and that Nova.Corp. did not maintain a regular place of business outside of New Jersey in 1999.

 Section 6501 of the Internal Revenue Code provides that “the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)." I.R.C. § 6501. Compare N.J.S.A. 54A:9-4(a) which provides that: "Except as otherwise provided in this section, any tax under this act shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)."

 In Eiszner, no New Jersey income was reported on the initial tax return, and subsequently, over a million dollars in New Jersey source income was reported on an amended tax return. See Eiszner, 18 N.J.Tax at 585.

 The Legislature has provided for an extension period where the parties consent. See N.J.S.A. 54A:9-4(c)(2). Additionally, a tax may be assessed at any time if no return is filed, a false or fraudulent return is filed with intent to evade tax, or the taxpayer fails to comply with N.J.S.A. 54A:8-7, in not reporting a change or correction increasing Federal taxable income as reported on the Federal income tax return. Also, an extension is available for a recovery of a refund made in error by the Director. N.J.S.A. 54A:9-4(c).

 See N.J.S.A. 54A:4-1(e) (which allows the Director additional time to recalculate a resident tax credit when a taxpayer actually pays a different amount of taxes to a foreign state than reported in their tax return. The Director does not argue that this section is applicable. Nonetheless, filing an amended return does not give the Director an opportunity to deny the credit, it only allows recalculation of the total tax using that new number.)

 While not controlling here, it is noteworthy that'the United States Bankruptcy Court for the Northern District of Oklahoma provided for a bifurcated statute of limitations analysis for tax returns under the Bankruptcy Code (11 U.S.C.A. § 1 et seq.):
It appears to this Court that, in cases involving taxpayer misreporting, the following general approach is proper, at least absent special circumstances *623 which make it unfair or impractical: the limitations period lor an original tax return should commence on the filing of the original return; an amended return should not toll the period as to the same taxes admitted to be owed in the original return; but an amended return should toil the period as to additional tax liability admitted for the first time m the amended return. Lamborn v. United States ex rel. IRS (In re Lamborn), 204 B.R. 999, 1005 (Bankr.D.OkIa.1997) (emphasis in original).