The opinion of the court was delivered by
STERN, P.J.A.D.
Plaintiff, Joyce H. Eiszner, appeals from a judgment of the Tax Court entered on January 21, 2000, affirming the Director of the Division of Taxation’s final determination of an assessment on plaintiffs 1992 non-resident gross income tax return. The Tax *500 Court concluded that the assessment was not barred by the three-year statute of limitations provided in N.J.S.A-. 54A:9-4(a), and adjudicated as taxable income the disputed income from a New Jersey resident trust. The Director, upheld by the Tax Court, concluded that a sum of $1,069,213, described only as “trust, etc.” income[1] resulting in no income from New Jersey sources and no New Jersey tax, did not “constitute[ ] an employee death benefit which [would be] explicitly excluded from gross income by N.J.S.A. 54A:6-4b.” Eiszner v. Director, Div. of Taxation, 18 N.J.Tax 579, 593-98 (TaxCt.2000).
On this appeal, the taxpayer argues that “the Tax Court erroneously declined to follow the authorities interpreting former Internal Revenue Code section 101[(b)] in construing N.J.S.A. 54A:6-4(b)” and that “in construing N.J.S.A. 54A:9-4(d), the Tax Court erred in not following the authorities interpreting Internal Revenue Code section 6501(e).” Plaintiff further argues that she “is entitled to a refund of any 1992 gross income tax which she paid; with interest.”
The stipulated facts are as follows:
1. Joyce H. Eiszner (“Plaintiff”) was a resident of Illinois during all of calendar year 1992.
2. Plaintiff is the widow of Dr. James R. Eiszner (“Dr. Eiszner”), the former chief executive officer of CPC International, Inc. (“CPC"). Dr. Eiszner died on September 11,1990.
3. At the time of his death, Dr. Eiszner was a resident of New Jersey, was employed by CPC International, Inc., in New Jersey, and was a participant in the CPC International, Inc. 1984 Stock and Performance Plan, [and] 1976 Slock Option and Performance Plan (the “Plan”). ...
4. Under the Plan, shares of CPC stock and slock appreciation rights are contingently granted to participants. Amounts actually received from the Plan depend upon, among other things, CPC’s performance during designated “Cycles”, o. The Plan provides that a.participant must be an employee at the end of a Cycle in order to be entitled to a payment from the Plan. The Plan further provides that if a participant dies prior to the end of a Cycle, CPC’s board of directors has absolute discretion as to whether or not a Plan payment will be made for such Cycle to the participant's estate or legal representative.
*501 6. On September 18, 1990 and subsequent to Dr. Eiszner’s death, the CPC board of directors voted to authorize a payment to Dr. Eiszner’s estate (the “Estate”) for the 1988 Cycle.
7. During 1992, the Plan paid $1,152,001 (the “1992 Plan Payment”) to the Estate for the 1988 Cycle, which ended on December 31, 1991, more than a year after Dr. Eiszner’s death.
8. According' to the Plan’s terms, the CPC board of directors was under no obligation to make the 1992 Plan Payment, and the 1992 Plan Payment would not have been paid to the Estate absent board action.
9. According to the Plan’s terms, Dr. Eiszner had no entitlement or right to the 1992 Plan Payment.
10. The 1992 Plan Payment was made to the Estate and transferred to the Revocable Trust of Dr. James R. Eiszner (the “Trust”), which is a New' Jersey Resident Trust. The Trust then distributed the monies to Plaintiff.
11. Plaintiff filed a Gross Income Tax — Non-Resident Return, Form NJ-1040NR — 1992 (the “Nonresident Return”) on August 10, 1993. . Attached to the Non-Resident Return was Mrs. Eiszner’s 1992 Illinois Individual Income Tax Return — Form IL-1040 (the “Illinois Return”) to w'hich was attached her “Supplement to Illinois” 1992 federal Form 1040 — U.S. Individual Income Tax Return (the “Supplement to Illinois’ Federal Return”). Plaintiff did not attach the 1992 New Jersey Trust Fiduciary Return to her 1992 Gross Income Tax Non-Resident Return.
12. The Trust filed a Gross Income Tax Fiduciary Return, Form NJ-1041 — 1992 on August 10, 1993 (the “Trust Fiduciary Return”), and the Estate filed a Gross Income Tax Fiduciary Return, Form NJ-1041 — 1992 on June 9, 1993 (the “Estate Return”). .
13. On the Nonresident Return, Plaintiff reported $1,069,213 on line 43 “other” under column A “Amount of Gross Income Everywhere” . The Nonresident Return reported no income from New' Jersey sources and no New Jersey tax due.
14. The $1,069,213 refleeted on the Non-Resident Return is the 1992 Plan Payment less allocable expenses.
15. Statement 1 attached to the Nonresident Return reported a gain recognized from the Trust .. in the amount of .$100. Plaintiff also reported $1,069,213 on the attached “Supplement to Illinois” Federal Return line 18 “Rents, royalties, partnerships, estates, trusts, etc.” ... Statement 6 of the attached “Supplement to Illinois” Federal Return reported interest income from the Trust in the amount of $44,576 and $33,340 . ., and Statement 8 of the attached “Supplement to Illinois” Federal Return also listed income from the Trust in the amount of $10,795.
16. Statement 1 of the Trust Fiduciary Return . reports income from the Estate in the amount of $1,168,853, and the attached federal Schedule E . reports income from Estates and Trusts in the amount of $1,085,821. Statement 3 of the Trust Fiduciary Return .. reported a distribution to Plaintiff in the amount of $1,199,105 and sets forth Plaintiff’s address, social security number, and her status as non-resident of New Jersey.
17. Statement 1 of the Estate Gross Income Tax Fiduciary Retain ... reported taxable income described as “CPC International Inc Shares” in the amount of *502 $766,688 and “CPC International Inc 1988 Performance Award” in the amount of $385,313.
18. The Defendant sent Plaintiff a Notice of Deficiency dated August 29,1997 (the “Notice of Deficiency”) which asserts that Plaintiff is liable for 1992 New Jersey Gross Income Tax in the amount of $78,647 plus $45,108 in accrued interest calculated to October 15,1997.
19. Plaintiff Sled a Protest dated November 25, 1997 in which she contested the assessment proposed in the Notice of Deficiency. ...
20. Defendant issued a Final Determination dated June 5, 1998 (the “Final Determination”) in which it asserted liability for 1992 Gross Income tax due in the amount of $55,647, plus accrued interest of $39,353.07 calculated to July 15, 1998. .. The Final Determination reflected credit for a $23,000 estimated tax payment previously made by Plaintiff.
21. If Defendant prevails in this matter, Defendant’s computation of the proposed assessment in the Final Determination would be correct.
During 1992, the CPC plan committee paid Dr. Eiszner’s estate $1,152,001 which he would have received had he lived to the end of the 1988 cycle. The estate passed the payment on to the trust which distributed it to plaintiff in Illinois.
The Tax Court held that the payment plaintiff received through the trust from her husband’s employer should be included in the 1992 non-resident’s gross income tax return. There is no dispute that if the payment is taxable at all, the entire amount would be taxable, even though it was paid to the estate and then into a trust. This is because the fiduciaries made a “pass through” distribution, and the payment retains the same character in the hands of the taxpayer as did the distribution to the estate and trust from a New Jersey source. Plaintiff, however, claims that the payment was a “death benefit,” which is excluded from New Jersey income pursuant to N.J.S.A. 54A:6-4(b) because it parallels the “virtually identical” section 101(b) of the Internal Revenue Code of 1986.[2] Furthermore, plaintiff contends that it was a payment by the CPC fund to the estate of plaintiffs husband of an amount to which he was not otherwise “entitled” at the time of his death.
*503 Plaintiff also argues that, even assuming that it was taxable, the Division was “precluded from making 'an assessment for 1992 by the statute of limitations” embodied in N.J.S.A. 54A:9-4. Specifically, the statute provides for a three-year statute of limitations, and the notice of deficiency was issued more than four years after the 1992 return was filed. Plaintiff again relies upon the “virtually identical” IRS Code section 6501(e), and contends that we must interpret our tax code as the IRS provisions had been interpreted before our law was adopted.
We are asked to decide the substantive issue concerning the “death benefit” because a similar discretionary distribution was made by the fund after 1992 for the later cycle or cycles in which they would have vested had Dr. Eiszner survived. We address that issue first, and agree with the Tax Court’s decision in that regard. See 18 N.J.Tax at 593-98. We add that, if plaintiff were correct, sophisticated business people could defer, and ultimately avoid, the payment of tax by plans which give trusted business associates the discretion to make substantial payments at the time of death.
Plaintiffs decedent or his estate had no right or entitlement to these funds at the time of, or by virtue of, his death. They simply were not “death benefits” within the meaning of New Jersey tax law. Plaintiff cannot take solace from interpretations of federal law, especially because federal tax law includes both income and estate taxation[3] irrespective of source, residence or location of property, factors which are relevant to taxation by the State. See N.J.S.A. 54:33-1 through 54:38A-6; 54:34-1; 54:38-1; N.J.S.A. 54A:2-1, 2-1.1, 5-1, -7, -8.
We also agree with the Tax Court that in accordance with N.J.S.A. 54A:9-4(d), the six-year statute of limitations applies in this case. See 18 N.J.Tax at 593. We recognize that the Director *504 may well have ultimately made his assessment based on information he received from his review of the 1992 estate and trust returns.[4] We also acknowledge that it took the Director more than three years after the plaintiffs income tax return was filed, and her refund was requested, to find the information.
However, the non-resident income tax return did not identify any “nature [or] source” of the trust income, and attached only a copy of the Illinois return. Attached to the Illinois return was a copy of the federal return which included a reference to “royalties, rents and trusts, etc.” without identification or particularization. As we understand the record, a federal schedule “E” (relating to trusts and estates) was not attached to the federal portion which was attached to the New Jersey return. Moreover and significantly, despite the specific column, the State return failed to identify any of plaintiffs income (in Part I “Total Income, lines 33-44”) as being “from New Jersey sources.” [5] In these circumstances, we agree with the Tax Court that, even though N.J.S.A. 54A:9-4(d) does not expressly include the word “source,” given the very essence of a State source based gross income tax, (see, e.g., N.J.S.A. 54A:2-1, 2-1.1; 54A:5-1, -7, -8), the statute must be read to require (directly or by attachment) an adequate identification of the source as part of the “nature” of the income reported.
The judgment is affirmed.

 The sum of $1,069,213 was reflected as “trust, etc.” income on plaintiffs federal tax return and attached to her Illinois income tax return. The Illinois return and the federal return were then attached to plaintiff’s New Jersey return.

 26 U.S.C.A. § 101(b) was repealed on August 20, 1996. Pub.L. No. 104-188 Title I, § 1402(a), 110 Stat. 1789 (1996).

 For both federal and state purposes, the amounts and recipients are significant in terms of taxation on estates and transfers at the time of death We do not consider recent amendments to the Internal Revenue Code. See Pub.L. No. 107-16 (2001).

 We were told at argument that the State received a copy of the K-1 return filed by the resident trust with the IRS. New Jersey taxes New Jersey gross income of estates and trusts for which returns must be filed. See N.J.S.A. 54A:2-1; 54A:5-1h. The Estate Tax return reflected $1,152,001 from CPC, including the 1988 Performance award. The trust return lists $1,085,821 as “nonpassive income" from the Estate.

 The income, including the $1,069,213 "other” income, was listed in the column for "amount of gross income (everywhere),” not "amount from New Jersey sources.”