915 A.2d 600

CAMPO JERSEY, INC., PLAINTIFF–APPELLANT, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT–RESPONDENT.

BUBBLES, INC., T/A AUNTIE ANNE'S PRETZELS, PLAINTIFF–APPELLANT, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 10, 2007—Decided February 8, 2007.

368

Before Judges LEFELT, PARRILLO and SAPP–PETERSON.

*Steven P. Sukel,* argued the cause for appellant Campo Jersey, Inc. (*Sukel, Macnow & Associates,* attorneys; *Mr. Sukel,* on the brief).

*R. James Kravitz,* argued the cause for appellant Bubbles, Inc. (*Fox Rothschild,* attorneys; *Jonathan D. Weiner,* of counsel; *Mr. Kravitz,* on the brief).

*Marlene G. Brown,* Deputy Attorney General, argued the cause for respondent (*Stuart Rabner,* Attorney General of New Jersey, attorney; *Patrick DeAlmeida,* Assistant Attorney General and *Ms. Brown,* on the brief).

The opinion of the court was delivered by

PARRILLO, J.A.D.

In this consolidated matter, taxpayers Campo Jersey, Inc. (Campo) and Bubbles, Inc. (Bubbles) appeal from adverse Tax Court determinations upholding sales tax assessments on food items they sold on the basis that appellants' "premises" included the total space of the facilities that customers had to enter to make their food purchases. The issue of how to define "premises" for the purpose of applying the sales tax under the Sales and Use Tax Act, *N.J.S.A.* 54:32B–1 to –29, to vendors like Campo and Bubbles is one of first impression in this State.

By way of background, beginning in September 1992, Campo, a franchisee of Mrs. Fields Famous Brands, L.L.C. (Mrs. Fields), had a license at the Meadowlands Sports Complex to sell cookies and brownies from free-standing, mobile carts inside Giants Stadium and Continental Airlines Arena. The license agreement called for employees of the general concessionaire, Harry M. Stevens, Inc. of New Jersey (HMS), to perform all labor, including preparation and sale of the cookies and brownies and cleaning of the room where they were prepared, and for HMS to pay them. Campo had no employees or representatives at the stadium or arena except for its president and owner, William Bori, and a manager who collected the sales proceeds daily. The controlling agreements did not grant Campo the right to use any specific areas of the facilities for either preparation or sale of its products.

Campo received deliveries of "quick frozen" cookies from Mrs. Fields that were kept in a freezer in a room on the upper level of the stadium. Prior to an event, Bori decided how many cookies should be baked; HMS employees would bake the frozen cookies in ovens in the room on the upper level, let them cool, and then fill unsealed bags with two cookies each, which they would place on a hand truck and take to the carts for sale. The process for Campo's brownies was similar, except that the frozen dough had to be spread in trays before it was baked, the baked product had to cool for ten hours after baking, and the brownies were packaged singly.

Campo paid sales tax on its receipts at the stadium and arena until 1995 when it first learned of a letter from a tax counselor at respondent Division of Taxation to tax advisors for Mrs. Fields, stating:

Your letter dated February 24, 1986 has been referred to me for reply. In it you raise a question as to the taxability of sales made by a retailer.

Your letter states that a taxpayer operates retail bakery type outlets. As a general rule stores are located in enclosed retail shopping malls. Their principal product is cookies (cookies comprise approximately 90% of total sales), however they also sell other related food products and beverages. In addition to cookies, the taxpayer sells brownies, muffins, milk, coffee, non-carbonated beverages, carbonated beverages, and novelty items (e.g. cookie tins).

Since the taxpayer does not consider its product for immediate consumption and does not intend to compete with such food product retailers, it positions its stores away from mall locations where food courts are provided which facilitate immediate consumption. There are not facilities for seating or food consumption on the premises.

Cookies, brownies, and muffins prepared by the taxpayer are priced by weights. Sales may be made in any quantity desired including by the dozen, half-dozen, or in larger quantities. All bakery products are sold and packaged on a take out basis and all packaging therefore includes instructions for re-heating the product at a later time if desired. The taxpayer also provides mail order services to consumers.

The New Jersey Administrative Code provides in part as follows:

Food or drink sold in an unheated state is not subject to tax when commonly sold in food stores in bulk, by weight, by the dozen (or part thereof) or by volume (gallon, quart, etc.) for off premises consumption.

1. The exemption for food or drink provided in this paragraph does not include any item classified as a candy or confectionary or carbonated soft drinks and beverages. *N.J.A.C.* 15:24–12.3(a)4.

> Based upon the facts submitted for review, it is the opinion of this office that (1) the sales by the taxpayer of baked goods including cookies, brownies, muffins, and non-carbonated beverages and milk are not subject to sales tax in New Jersey; and (2) the retail sales of carbonated beverages, hot coffee and novelty and other non-food items are subject to sales tax.
>
> It may also be noted that since production is done on the premises from raw materials to a finished product some equipment may qualify for sales tax exemption as production equipment....

Instead of relying on the letter, Bori sent his own inquiry to respondent, which is not in the record. Nonetheless, on February 17, 1995, a Tax Service Specialist in respondent's Tax Services Branch, responded as follows:

> I am writing in response to your inquiry concerning the operation of a retail bake shop located at the New Jersey Meadowlands Sports Complex. You state that you sell cookies, brownies, muffins by quantity, as well as hot and cold beverages and novelty items.
>
> Baked goods sold and packaged for take-out are not subject to sales tax. Hot beverages and carbonated beverages are subject to tax. Noncarbonated beverages sold by the can or bottle are exempt from tax. Beverages sold by fountain are taxable; milk is exempt from tax. The sale of tins of cookies is also exempt from tax.

Bori understood this reply as indicating that Campo owed no sales tax, because it had no "premises" at the stadium and arena and because its cookies and brownies were similar to those commonly sold at stores that did not chiefly sell prepared foods. Campo thus stopped paying tax on its sales of cookies and brownies at the stadium and arena.

Beginning on October 15, 1996, Bubbles, a franchisee of Auntie Anne's, Inc., leased a booth-style store in the Quakerbridge Mall in Lawrence and sold pretzels and beverages over the counter, and from a temporary kiosk-type cart or stand as well. Bubbles' lease required it to have business hours that coincided with the mall's. Common areas in the mall were under the owner's exclusive control, with Bubbles and the other tenants having a "license in common" to use them. During the relevant period, the common areas did not have furniture or fixtures to facilitate the consumption of food items.

Bubbles' employees mixed raw ingredients into dough, shaped it into pretzels, baked them, and dipped them in butter at the store. They brought those pretzels to the store's counter or to the kiosk, both of which had a heating device called a "round-up" that finished baking the butter into the pretzels and kept them warm until sale. Customers could buy any number of pretzels, and Bubbles would place them in bags, one sized to hold three or four pretzels and the other sized to hold six, with printed instructions for reheating. They could also buy dips in various flavors for the pretzels. In addition, Bubbles sold lemonade, a "fruit slushy type of drink" called "Dutch ice," and other drinks in cups of various standardized sizes.

According to Robert Burness, Bubbles' president and owner, he was at the store "day in and day out" during the first twelve months of operations, and thereafter for an amount of time that "varied" in ways he did not specify. He said that most sales occurred "off general meal hours," meaning after lunch or after dinner, and that sometimes business was particularly heavy from 8:00 p.m. to 9:30 p.m., the mall's closing time. Customers were "headed home at that time, you know, they are finished shopping for the day and they are taking a snack to go". Burness estimated sales for consumption outside the mall to be seventy-five percent of Bubbles' business, based on his observations of customers who exited the mall after making their purchases.

Bubbles did not collect sales tax on its pretzels during the period in issue. As did Campo, Burness believed that its only "premises" were the cart and store-front counter themselves, so that even customers who consumed their products immediately after purchase did so off the premises.

Respondent disagreed with appellants' interpretation, concluding that their "premises" included the interiors of the facilities that customers had to enter in order to make a purchase. Consequently, in separate proceedings, respondent assessed sales tax deficiencies against both Campo and Bubbles. In August 2002, respondent issued its final audit determination that Campo owed

sales tax of $96,557 for the period of April 1995 to March 1999, plus an "amnesty penalty" and interest. Likewise, in March 2002, respondent assessed Bubbles $104,577.70 in sales tax deficiency plus interest for the period of October 1, 1996 to December 31, 2000.

Both taxpayers appealed their assessments to the Tax Court, which found in respondent's favor in each instance. *Campo Jersey, Inc. v. Dir., Div'n of Tax'n,* 22 *N.J.Tax* 251 (2005).[1] The court reasoned in part:

> that the [respondent]'s regulation defining "premises" broadly as the total space in or on which the vendor conducts his business, *N.J.A.C.* 18:24–12.2, was consistent with the ordinary meaning and usage of the term. The taxpayer's sales were, accordingly, taxable sales of food for consumption on the premises under the Director's regulations. *See N.J.A.C.* 18:24–12.2 and *N.J.A.C.* 18:24–12.3(a)(1). The court held that the interpretation given to the statute by those regulations comported with the plain language of the statute, was consistent with the legislative intent, and was reasonable.

These appeals, which have been consolidated, follow.

Both taxpayers primarily argue that the Tax Court erred in broadly defining the operative statutory term "premises" to encompass the entire facility or structure in which their businesses are housed rather than just the limited area of the kiosks or storefront counter which they control. Bubbles additionally argues that even if the term is so expansively construed, the respondent never properly ascertained the percentage of food items sold for consumption outside the mall and consequently its sales tax assessment was not entitled to the presumption of validity. We disagree with both propositions.

At the outset, we note that the 2005 version of the governing statute, *N.J.S.A.* 54:32B–3, was enacted several years after Campo's and Bubbles' audit periods. *L.* 2005, *c.* 126, § 2 (effective October 1, 2005). It conforms the sales and use tax to the Streamlined Sales and Use Tax Agreement that some other states

---

[1] In a separate opinion on June 2, 2005, respondent affirmed Bubbles' assessment.

have enacted. *S. Budget & Approp. Comm., Statement to S. 1958* (July 1, 2005); *A. Budget Comm., Statement to A. Comm. Sub. for A. 3473* (June 29, 2005). One new set of provisions exempts "bakery items," the definition of which includes cookies, cakes, tortillas, and numerous other items to which brownies and pretzels are not patently dissimilar, as long as the items are sold without eating utensils. *N.J.S.A.* 54:32B–3(c)(3)(ii)(C).

No one seriously argues that the 2005 version applies to the matter at hand. Indeed, while a change in the judicial interpretation of statutory language is ordinarily applied retroactively, *Crespo v. Stapf*, 128 *N.J.* 351, 367, 608 *A.2d* 241 (1992), the presumption is that new statutes are applied prospectively, *Dewey v. R.J. Reynolds Tobacco Co.*, 121 *N.J.* 69, 95, 577 *A.2d* 1239 (1990) (citing *Gibbons v. Gibbons*, 86 *N.J.* 515, 522–23, 432 *A.2d* 80 (1981)). " '[A] statute [that] changes the settled law and relates to substantive rights is prospective only, unless there is an unequivocal expression of contrary legislative intent.' " *Ibid.* (quoting *Pennsylvania Greyhound Lines v. Rosenthal*, 14 *N.J.* 372, 381, 102 *A.2d* 587 (1954)). Nowhere is it indicated that the Legislature intended the enactment to apply retroactively, such as the Legislature's identification of a class of taxpayers in need of relief, or of an inequity among otherwise similarly situated taxpayers. *See S. Budget & Approp. Comm., Statement to S. 1958, supra* (no such indication); *A. Budget Comm., Statement to A. Comm. Sub. for A. 3473, supra* (same). As such, we decline to apply the 2005 version of *N.J.S.A.* 54:32B–3 retroactively.

The version of *N.J.S.A.* 54:32B–3 that was in effect during Campo's and Bubbles' audit periods imposed sales tax on:

(c) Receipts from the sale of food and drink in or by restaurants, taverns, vending machines or other establishments in this State, or by caterers ...:

(1) In all instances where the sale is for consumption on the premises where sold;

(2) In those instances where the vendor or any person whose services are arranged for by the vendor, after the delivery of the food or drink by or on behalf of the vendor for consumption off the premises of the vendor, serves or assists in serving, cooks, heats or provides other services with respect to the food or drink

[excluding only non-profit and governmental programs that help the homebound elderly or the disabled];

 (3) In those instances where the sale is for consumption off the premises of the vendor, and consists of a meal, or food prepared and ready to be eaten, of a kind obtainable in restaurants as the main course of a meal, including a sandwich, except where food other than sandwiches is sold in an unheated state and is of a type commonly sold in the same form and condition in food stores other than those which are principally engaged in selling prepared foods[.]

All transactions under *N.J.S.A.* 54:32B–3(c) are taxable unless the vendor or customer establishes otherwise. *N.J.S.A.* 54:32B–12(b). To be sure, there is no statutory definition of "premises", the applicable governing standard in *N.J.S.A.* 54:32B–3(c)(1). However, the implementing regulation for taxing sales of prepared foods and drinks in effect during the audit period makes a fundamental distinction between items prepared for consumption on and off the "premises", and then defines that term:

"For consumption on the premises" shall mean that the food or drink sold may be immediately consumed on the premises where the vendor conducts his business.

 1. In determining whether an item of food is sold for immediate consumption, there shall be considered the customary consumption practices prevailing at the selling facility.

"Premises" shall mean the total space and facilities in or on which the vendor conducts his business, including, but not limited to, parking areas for the convenience of in-car consumption, counter space, indoor or outdoor tables, chairs, benches and similar convenience.

[*N.J.A.C.* 18:24–12.2.]

Thus, once it is established that an item of food or drink is sold "[f]or consumption on the premises" it is taxable under *N.J.A.C.* 18:24–12.3(a), which imposes the tax on those items "[i]n all instances" and without exceptions. The regulation then goes on to provide a non-exclusive list of subject vendors, declaring that "[t]he following establishments, *as well as other establishments* engaged in the sale of food and drink for consumption on or off premises, are required to collect the tax[.]" *N.J.A.C.* 18:24–12.3(b) (emphasis supplied). It then lists many kinds of establishments, including Mall food courts, but not until the 2003 amendment did the regulation name Mobile vending operators or Sports/entertainment arena food vendors. *Ibid.*; 35 *N.J.R.* 3848(a), 3852 (August 18, 2003).

Like the version of *N.J.S.A.* 54:32B–3(c) in effect during appellants' audit periods, *N.J.A.C.* 18:24–12.2 focuses on the nature of the prepared food and drinks. The regulation fairly indicates that the determination of whether these items are sold "[f]or consumption on the premises" is based on their suitability for immediate consumption and the customary habits of the customers at the particular location. Similarly, the definition of "premises" as "the total space and facilities in or on which the vendor conducts his business" focuses on the locations from which customers can make their purchases, rather than on whether particular areas within a larger facility are under the vendor's exclusive control.

Appellants contend, however, that by broadening "premises" beyond the area within their immediate control, respondent, in promulgating the regulation, departed from the statutory standard and exceeded its delegated authority. Alternatively, appellants argue that respondent, by adopting a new position or interpretation on the taxability of sales of prepared food, engaged in an improper exercise of rulemaking by adjudication. We disagree on all counts.

First, we recount some controlling principles of law. The interpretation of a statute begins with its plain language, which is to receive its ordinary meaning as long as there is no indication that the Legislature had a different intent. *Koch v. Dir., Div'n of Tax'n*, 157 *N.J.* 1, 7, 722 *A.*2d 918 (1999); *Merin v. Maglaki*, 126 *N.J.* 430, 434–35, 599 *A.*2d 1256 (1992). If the statute admits of more than one interpretation, it is to be interpreted in light of the Legislature's general intention, without undue emphasis on any particular word. *Koch, supra*, 157 *N.J.* at 7, 722 *A.*2d 918. Our courts defer to the interpretation of the agency charged with the statute's enforcement, *id.* at 8, 722 *A.*2d 918; *Smith v. Dir., Div'n of Tax'n*, 108 *N.J.* 19, 25, 527 *A.*2d 843 (1987), and the Director's interpretation will prevail "as long as it is not plainly unreasonable". *Koch, supra*, 157 *N.J.* at 8, 722 *A.*2d 918 (quoting *Metromedia, Inc. v. Dir., Div'n of Tax'n*, 97 *N.J.* 313, 327, 478 *A.*2d 742 (1984)).

■■■■ Second and just as clear, regulations that "come within the ambit of delegated authority" are presumed to be reasonable unless the party challenging them shows them to be "arbitrary, capricious, unduly onerous or otherwise unreasonable." *New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 561, 384 *A.*2d 795 (1978); *accord In re Freshwater Wetlands Prot. Act Rules*, 180 *N.J.* 415, 430–31, 852 *A.*2d 167 (2004). To be sure, "an administrative agency may not, under the guise of interpretation, extend a statute to give it a greater effect than its language permits", therefore "regulations that flout the statutory language and undermine the intent of the Legislature" are invalid. *GE Solid State v. Dir., Div'n of Tax'n*, 132 *N.J.* 298, 306–07, 625 *A.*2d 468 (1993) (citations omitted). The interpretation of regulations follows the principles of statutory interpretation. *See State v. Hessen*, 145 *N.J.* 441, 456, 678 *A.*2d 1082 (1996) ("The same understanding of the principles of statutory construction apply to the interpretation of court regulations.").

■■■■ Lastly, agencies normally should promulgate new rules through the rulemaking procedures of the Administrative Procedure Act, *N.J.S.A.* 52:14B-1 to –15. *Metromedia, supra*, 97 *N.J.* at 330–31, 478 *A.*2d 742. An agency's determination of a disputed question during an adjudication amounts to the declaration of a new rule if it

(1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy.

[*Id.* at 331–32, 478 *A.*2d 742.]

The *Metromedia* test is flexible, because "[t]hese relevant factors can, either singly or in combination, determine in a given case

whether the essential agency action must be rendered through rule-making or adjudication." *Id.* at 332, 478 *A.*2d 742.

Governed by these standards, we conclude that respondent's assessment of a deficiency against both appellants was an ordinary application of the regulation, rather than a new interpretation of it, and because the regulation comported with both the meaning and purpose of the governing statute, respondent did not exceed its delegated authority in its promulgation.

Here, in the absence of a statutory definition, it was reasonable for respondent to conclude that consistent enforcement required focusing, as the statute did, on the nature of the food item as readily consumable without post-sale assistance, rather than on the identity of the vendor or the manner by which the vendor ultimately offered such items for sale. After all, the sales tax is a tax on the customer, not the vendor who merely collects it. *N.J.S.A.* 54:32B–12(a). Yet appellants continue to argue the term "premises" should be construed narrowly, consistent with the terms of their licensing agreements which limit the "control" area to the physical dimensions of their kiosks and booths. However, the taxability of a sales transaction should not turn on the provisions of a private agreement for the use of real property. Such a crabbed construction would allow vendors to contract away sales tax liability by lease provisions giving concessions to sell food. Rather, we find the more expansive definition in the regulation as "the total space in or on which the vendor conducts his business" consistent not only with the ordinary meaning of the term but with the legislative intent as well.

Even accepting the broader definition, Bubbles nevertheless argues that, in its case, respondent's implicit determination that all sales were for consumption inside the mall was arbitrary and capricious. It points to the fact that its heated pretzels were packaged in bags large enough to hold three or more pretzels with printed instructions for reheating and were sold after dinner to customers leaving the mall. This claim lacks merit.

In the first place, all of Bubbles' sales were of pretzels that were taxable for being prepared foods that could be eaten right away, notwithstanding the claim that a significant proportion of its customers may have refrained from doing so. In any event, the quality of respondent's audit of Bubbles and the proportion of Bubbles' sales for consumption inside the mall versus outside the mall were factual questions. Appellate review of such questions is limited, because "[t]rial court findings are ordinarily not disturbed unless 'they are so wholly unsupportable as to result in a denial of justice.'" *Meshinsky v. Nichols Yacht Sales,* 110 *N.J.* 464, 475, 541 *A.*2d 1063 (1988) (quoting *Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974)).

Moreover, tax assessments are presumed to be correct, and the taxpayer has the burden of proving otherwise. *N.J.S.A.* 54:32B–12(b); *Atlantic City Transp. Co. v. Dir., Div'n of Tax'n,* 12 *N.J.* 130, 146, 95 *A.*2d 895 (1953). A taxpayer cannot rebut the presumption of correctness if its challenge to the assessment rests on "naked assertions" that lack "supporting records or documentation." *Yilmaz, Inc. v. Dir., Div. of Tax'n,* 22 *N.J.Tax* 204, 231–32 (2005). For a challenge to an assessment based on the Director's audit of a cash business, which challenge involves only factual issues and the methods employed, the taxpayer must present evidence that is "definite, positive, and certain in quality and quantity." *Pantasote Co. v. City of Passaic,* 100 *N.J.* 408, 413, 495 *A.*2d 1308 (1985).

*Pantasote* held that the taxpayer's failure to present a credible challenge to the quantum of the assessment precludes a challenge to its methodology:

[A]bsent any strong indication arising from the evidence properly before the Tax Court that the *quantum* of the evidence of the assessment was far wide of the mark ..., inadequacies in the ... evidence or deficiencies in the assessment methodology will not impugn the presumption of validity that attaches to the original assessment.

[*Pantasote, supra,* 100 *N.J.* at 414–15, 495 *A.*2d 1308.]

In the companion property tax case of *F.M.C. Stores Co. v. Borough of Morris Plains,* 100 *N.J.* 418, 495 *A.*2d 1313 (1985), the

Court specified that the Tax Court had to find both that "the *quantum* of the assessment itself is so far removed from true value and that the original assessment methodology is patently arbitrary or capricious" before it "may then properly determine true value in light of the evidence before it." *Id.* at 431, 495 *A.2d* 1313. However, in exceptional cases, when the methodology is so "totally deficient" that it becomes "a perversion of proper appraisal techniques at every step of the process" that "provides no reliable indication that the *quantum* of the assessment is itself reasonable", the Tax Court "is obligated to exercise its power to make an independent assessment based on the evidence before it and data properly at its disposal." *Transcont'l Gas Pipe Line Corp. v. Bernards Township,* 111 *N.J.* 507, 538–39, 545 *A.2d* 746 (1988).

In this case, it was well within the Tax Court's fact-finding discretion to conclude Bubbles did not meet the requisite standard. Burness himself estimated that at least twenty-five percent of the pretzels were consumed inside the mall. Indeed, the lease itself contemplates consumption of Bubbles' food products in the mall. Moreover, Bubbles presented no register tapes, receipts or other documentation to support its assertion that Bubbles did most of its business after the dinner hour to customers leaving the mall. Indeed, the Tax Court found that Burness's testimony about his actual observations of where customers consumed their purchases "was not credible or reliable" and at best, speculative and incomplete. While Burness said that he was always at the store during the first year of the audit period, "his testimony regarding his presence or observations in subsequent years was vague". Furthermore, the court found implausible Burness' testimony that he was able during busy periods to observe whether or not customers consumed their purchases before reaching a mall exit that was 150 feet from the store.

As for respondent's methodology, even assuming that the time of day for a purchase tended to indicate whether the customer was more likely to consume the product inside or outside the mall,

there was no documentation about the timing of the sales and no observations more detailed than Burness's general impressions. Bubbles does not suggest what methodology respondent should have used to make the desired determination other than to accept its estimate. Simply stated, respondent could not have made that determination on this record, and therefore Bubbles should not benefit from the absence of proof arising more from its own lack of diligence than from respondent's. *Cf. Ocean Pines, Ltd. v. Borough of Point Pleasant*, 112 *N.J.* 1, 11, 547 *A.*2d 691 (1988) (when taxpayer fails to provide taxing authority with information as required by statute, it may only appeal the reasonableness of the valuation in light of the information available to the assessor); *Yilmaz, supra*, 22 *N.J.Tax* at 235.

Accordingly, we find that Bubbles failed to present sufficient evidence to challenge the quantum of the assessment, and therefore respondent was not arbitrary for failing to allocate Bubbles' sales between pretzels sold for consumption inside the mall and outside.[2]

Lastly, Campo argues that interest and penalties on its assessments should be waived because in failing to collect sales tax it reasonably relied on a 1986 letter from respondent which Campo suggests exempted similar sales from taxation, as well as 1995 correspondence it claims interprets "premises" as Campo presently advocates. We disagree.

Estoppel may not be applied to compel the Division's continued application of a mistaken position that it has previously taken, because such a position by definition represented a tax exemption that the Director and his or her employees lacked the authority to grant. *Black Whale, Inc. v. Dir., Div'n of Tax'n*, 15

---

[2] Bubbles also argues that under *N.J.A.C.* 18:24–12.3(c)(4), its sales of lemonade and Dutch ice were exempt from taxation under the regulation for foods or drinks of a type commonly sold in food stores by weight or volume for off-premises consumption. This argument is unfounded because Bubbles sold its lemonade and Dutch ice by the portion, and sales in standardized portions are not the same as bulk sales in whatever volume or weight the customer demands.

*N.J.Tax* 338, 353–57 (1995). However, a taxpayer who reasonably relied on such a position, without contributing to the mistake by providing the Division with inaccurate or insufficient information, is entitled to a waiver of interest and penalties:

> The director shall waive the payment of any part of any penalty or any part of any interest attributable to the taxpayer's reasonable reliance on erroneous advice furnished to the taxpayer in writing by an employee of the Division of Taxation acting in the employee's official capacity, provided that the penalty or interest did not result from a failure of the taxpayer to provide adequate or accurate information.

[*N.J.S.A.* 54:49–11(b).]

The 1986 letter did not respond to any inquiry of Campo but rather directly replied to tax advisors of Mrs. Fields. That correspondence, moreover, simply recited the assertion of another taxpayer that it intended its baked goods to be consumed "off the premises", with no indication that respondent agreed, or that respondent even attempted to assess the veracity of such an assertion for that particular taxpayer and its products. It was therefore unreasonable for Campo to place any reliance on this letter.

Nor was Campo's reliance on respondent's 1995 correspondence justified. That letter merely accepted Campo's representations "that you sell cookies, brownies, muffins by quantity" and that they were "goods sold and packaged for take-out." To the extent the letter recited that Campo "operated a retail bakery", the Tax Court found it to be an inaccurate description of "actual operations", wrongly implying that Campo "had an actual, single non-mobile location with regular hours for conducting business, and that no admission fees were charged to gain entry to the shop." *Campo, supra,* 22 *N.J.Tax* at 275–76. Indeed, such a description was based on omissions of the fact that purchases of Campo's products were incidental to the customers' attendance at scheduled events that for the most part carried an admission charge. We therefore conclude that Campo's reliance on respondent's correspondence was neither reasonable nor justified and

therefore appellant did not qualify for a waiver of interest and penalties.

Affirmed.