NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

|  |  |
|---|---|
| WILLIAM MCCORMICK AND PATRICIA MCCORMICK, | TAX COURT OF NEW JERSEY |
|  | DOCKET NO: 000172-2017 |
| Plaintiffs, |  |
| vs. |  |
| DIRECTOR, DIVISION OF TAXATION, |  |
| Defendant. |  |

Decided: March 29, 2018.

Matthew A. Green for Plaintiffs (Obermayer, Rebmann, Maxwell & Hippel, attorneys).

Heather Lynn Anderson for Defendant (Gurbir S. Grewal, Attorney General of New Jersey, attorney).

CIMINO, J.T.C.

## **INTRODUCTION**

In this matter, the corporation, Charley O's, was audited and additional Corporation Business Tax and Sales and Use Tax liability was assessed. The individual plaintiff taxpayers, William and Patricia McCormick were then assessed for additional Gross Income Tax based upon the Charley O's audit. The McCormicks are shareholders of Charley O's. Charley O's timely appealed the

- 1 -

assessment of additional tax. The McCormicks did not timely appeal. The Director moves to dismiss the complaint as untimely. The McCormicks oppose the motion on the basis that if the underlying Charley O's appeal is successful, there will not be any tax liability due.

## STATEMENT OF FACTS

William and Patricia McCormick are shareholders of Charley O's, Inc., a corporation subject to an audit for Sales and Use Tax and Corporation Business Tax for the years 2009 through 2012. As a result of the audit, the Director issued a Notice of Tax Due to Charley O's for $116,349.74 in Sales and Use Tax liability and $65,309.46 in Corporation Business Tax liability, plus interest and penalties.

In addition, on June 23, 2014, the Director issued a Notice of Tax Due to William and Patricia McCormick, shareholders of Charley O's for Gross Income Tax liability in the amount of $38,917.98, plus interest and penalties. The notice of tax due sent to the McCormicks indicated that "The New Jersey Division of Taxation has recently completed an audit of CHARLEY O'S, INC. As a result of the audit, the Division has made adjustments to your New Jersey Gross Income Tax return(s) . . ." The Director's notice went on to state that "the indicated adjustments DO NOT constitute an audit of your personal Gross Income Tax . . . but rather an

adjustment to the return(s) resulting from the audit of [Charley O's]." The notice then went on to state the various appeal rights which the McCormicks were required to exercise within ninety days pursuant to law.

Thereafter, on September 24, 2014, Charley O's timely filed an administrative protest of the Sales and Use Tax and Corporation Business Tax due. On December 9, 2015, a final determination of the earlier protest was issued without any adjustment of the tax liability. A complaint with this court was timely filed on March 7, 2016 by Charley O's of both the Sales and Use Tax and Corporation Business Tax liability.

On September 23, 2016, over two years from the issuance of the June 23, 2014 Notice of Tax Due, the McCormicks filed a protest of the adjustment to their Gross Income Tax liability. This protest was denied on December 15, 2016 as untimely. The McCormicks then filed an appeal with this court on January 10, 2017.

The Director now moves to dismiss the complaint since the administrative protest was not timely filed. The taxpayers oppose this application by arguing that when Charley O's prevails on the underlying case, the basis for the adjustment of the McCormicks' Gross Income Tax obligation falls by the wayside. To support this assertion, William McCormick submits a certification which states he "specifically spoke to someone at the Division when you [sic]

received the personal tax assessment, that the personal assessment would be eliminated and that there was no need to file an appeal."

## CONCLUSIONS OF LAW

The thrust of the taxpayers' argument here is that if Charley O's prevails on its Sales and Use Tax and Corporate Business Tax appeal, the Division is estopped from collecting the additional assessment from the McCormicks for Gross Income Tax. It is undisputed that the McCormicks did not timely file a protest or a direct appeal to the Tax Court within ninety days of the Notice of Tax Due issued by the Director on June 23, 2014. N.J.S.A. 54:49-18 (protest to director), 54A:51A-13, -14 (direct appeal to tax court). Instead, a protest was filed on September 23, 2016 some two years after the Notice of Tax Due. On December 15, 2016, the Director denied the protest on timeliness grounds. The taxpayers then filed an appeal with the Tax Court on January 10, 2017.

The starting point of this analysis is "[s]uch strict adherence to statutory time limitations is essential in tax matters, born of the exigencies of taxation and the administration of government." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 424 (1985). See also Prime Accounting Dept. v. Township of Carney's Point, 212 N.J. 493, 507 (2013). However, in F.M.C. Stores Co., the New Jersey Supreme Court has also reminded us that government officials act solely in the public interest and

in dealing with the public, government must turn square corners. Id. at 426.

"Plaintiff is charged with knowledge of the law and cannot now defeat the imposition of statutory deadlines by pleading lack of knowledge or awareness." Peoples Exp. Co., Inc. v. Dir., Div. of Tax'n, 10 N.J. Tax 417, 434 (Tax 1989). See also Trump Plaza Associates v. Dir., Div. of Tax'n, 25 N.J. Tax 555, 571 (Tax 2010). To that end, the incorrect advice of a governmental official cannot estop the Director. See Tischler v. Dir., Div. of Tax'n, 17 N.J. Tax 283, 295 (Tax 1998). "In practice, taxing authorities in New Jersey have never been estopped, either by their spoken words, their written words, or their actions, from imposing a tax. . . Estoppel has not barred the imposition of a tax which a governmental representative has verbally indicated by words or writing is not applicable, or would be imposed differently than eventually assessed." Black Whale, Inc. v. Dir., Div. of Tax'n, 15 N.J. Tax 338, 355 (Tax 1995). See also Presbyterian Home at Pennington, Inc. v. Borough of Pennington, 409 N.J. Super. 166, 189, 25 N.J. Tax 249, 272 (App. Div. 2009); Campo Jersey, Inc. v. Dir., Div. of Tax'n, 390 N.J. Super. 366, 385, 23 N.J. Tax 370, 388 (App. Div. 2007). Even accepting the veracity of Mr. McCormick that he was informed that he did not have to appeal (despite written notice to the contrary), it is well established that the

Director is not estopped from imposing the tax liability in this case.

However, the Appellate Division has indicated estoppel or equitable relief may apply in the case of a mistake. Toys R Us, Inc. v. Dir., Div. of Tax'n, 300 N.J. Super. 163, 172-73 (App. Div. 1997). In Toys R Us, the matter was remanded for a closer examination of whether the tax had been assessed subsequent to a change of position by the Director determining that the transactions in question were not taxable. Ibid. The Appellate Division took this position consistent with the then recently enacted Taxpayer's Bill of Rights which ensures taxpayers are accorded basic rights of fair and equitable treatment. Ibid. Thus, the Appellate Division implicitly recognized that in dealing with the public, government must turn square corners. See F.M.C. Stores Co., 100 N.J. at 426.

The fact pattern here is similar to that faced by the Appellate Division in Hopkins v. Bd. of Review, 249 N.J. Super. 84 (App. Div. 1991); see also Rivera v. Bd. of Review, 127 N.J. 578, 587 (1992) (citing Hopkins). The Deputy Director of the Division of Unemployment and Temporary Disability Insurance determined that Ms. Hopkins was not eligible for unemployment benefits. Resultingly, she received two notifications from the Deputy, one indicating that she was ineligible for benefits she already received as well as benefits going forward, and a second notice

demanding repayment of the benefits she received. Id. at 87. See also N.J.S.A. 43:21-6(b)(1). An untimely administrative appeal was filed with the unemployment Appeal Tribunal. Ibid. The Appeal Tribunal was of the view that the untimely appeal deprived it of jurisdiction to consider the issue of claimant's eligibility for periods prior to her appeal, but, nevertheless, allowed the consideration of her eligibility subsequent to the filing of the appeal. Id. at 88. The Appeal Tribunal concluded that the claimant was indeed eligible for benefits going forward, but the appeal was dismissed on jurisdictional grounds insofar as it related to any prior time periods. Ibid. This decision was affirmed by the Board of Review, a subsequent administrative review body, and then timely appealed to the Appellate Division. Ibid.

The State argued that the administrative time limitation for an appeal to the Appeal Tribunal has consistently been held to be jurisdictional and hence not generally subject to either equitable tolling or to enlargement under the so-called discovery rule. Id. at 88-89 (citing Lowden v. Board of Review, 78 N.J. Super. 467, 470 (App. Div. 1963)).

Writing for the Appellate Division, Judge Pressler opined that the timeliness issue is essentially a red herring since the court was "satisfied that irrespective of the untimely appeal, the Division cannot recover from this claimant payments to which the [administrative body] has found her entitled." Hopkins, 249 N.J.

Super. at 89. The court noted the decision of the issue for which jurisdiction existed necessarily decided the issue over which there was not jurisdiction and that the issue and dispositive facts as to each set of issues were identical. Ibid. As a result, the court was "persuaded that requiring her to repay benefits she properly received . . . is too unpalatable a disposition for a court of law to accept." Ibid.

In Hopkins, the court determined that whatever procedural deficiencies may have been committed by the individual, the government is estopped from repayment of benefits which have been found to be properly paid. Ibid. However, Hopkins tempered this view mentioning that "courts are loathe, and appropriately so, to burden government with the consequences of estoppel. Nevertheless, we have not hesitated to do so where such matters as fundamental fairness, substantial justice and the legitimacy of the governmental process itself are implicated." Id. at 90. The application of estoppel is necessary in order to ensure that government meets its supervening obligation of fair dealing with the public. Ibid. (citing F.M.C. Stores Co., 100 N.J. at 426.)

Here, the court must balance the requirement of fair dealing with the public against the necessity of not burdening government with the consequences, both procedurally and substantively, of challenges relying upon estoppel. On the one hand, the McCormicks were given clear written notice of the necessity of an appeal to

protect their rights. They failed to file an appeal claiming that a Director's representative told them an appeal was not necessary. On the other hand, if Charley O's is successful, it could be considered akin to a mistake for the Director to keep any monies collected from the McCormicks in satisfaction of the Gross Income Tax assessment.

There is not any dispute that Charley O's timely and properly appealed the Sales and Use Tax and Corporation Business Tax final determinations issued by the Director. It is also without dispute, as evidenced by the notice sent by the Director, that the McCormicks' Gross Income Tax adjustment of liability is directly hinged to and dependent upon the Director's Sales and Use Tax and Corporation Business Tax assessment of Charley O's. However, the instant case differs from Hopkins in one material respect. The Corporation Business Tax and Sales and Use Tax liability have yet to reach a final determination.

Without a final determination of Charley O's Corporation Business Tax and Sales and Use Tax liability, it would be premature to decide whether estoppel barring liability for adjusted Gross Income Tax liability is appropriate. Obviously, if the taxpayer fully prevails on this matter, it goes without saying that there would have never been a Gross Income Tax adjustment in the first place. Conversely, if the taxpayer does not prevail, or only

partially prevails, there certainly would be Gross Income Tax due and owing.

This opinion would not be complete without addressing two countervailing arguments. First, if the McCormicks were assessed, paid the tax and then sought a refund some two years later, public policy would discourage an action for refund of taxes erroneously paid or illegally collected. Continental Trailways, Inc. v. Dir., Div. of Motor Vehicles, 102 N.J. 526, 548. This policy can apply even in situations in which the tax is found to be unconstitutional. Ibid. Citing our former Supreme Court, the Appellate Division has explained the underpinning of this policy as follows:

> . . . when money is demanded as a legal right, and it is paid without compulsion, and with a full comprehension of the facts, the money so paid cannot be reclaimed by a suit at law. The reason of this rule is, that the party paying had an opportunity to dispute the claim, and that having waived it at his own volition, it is impolitic to permit him to overhaul the transaction by an aggressive action. The doctrine is intended to be repressive of litigation, and it is promotive of the policy expressed in the maxim, 'Interest republicae ut sit finis litium.' It concerns the state that there be an end of lawsuits.
>
> [New Jersey Hosp. Ass'n v. Fishman, 283 N.J. Super. 253, 264 (App. Div. 1995) (citing Riker v. Jersey City, 38 N.J.L. 225, 225–26 (Sup. Ct. 1876)).]

The rule as applied to taxes was explained by our Supreme Court as follows:

> Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it back. Ignorance or mistake of law by one who voluntarily pays a tax illegally assessed furnishes no ground of recovery.
>
> [In re New Jersey State Board of Dentistry, 84 N.J. 582, 588 (1980).]

The finality is driven by government budgets which are prepared on an annual cash basis. Continental Trailways, Inc., 102 N.J. at 548. Unanticipated refunds could wreak havoc with the availability of funds for budgeted governmental programs.

It may not be equitable for taxpayers such as the McCormicks, who have not paid their taxes, to be in a better position than taxpayers who have. A closer examination of why the McCormicks did not pay the tax when assessed in addition to why they waited so long to appeal has to await resolution of the underlying case. For if the underlying case is affirmed, these questions along with any claim of non-liability for the tax may be moot.

The second countervailing argument is that each audit period stands on its own. Yilmaz, Inc. v. Dir., Div. of Tax'n, 22 N.J. Tax 204, 226 (Tax 2005), aff'd, 390 N.J. Super. 435, 23 N.J. Tax 361 (App. Div. 2007); Tozour Energy Sys. v. Dir., Div. of Tax'n,

23 N.J. Tax 341, 356 (Tax 2007). The Director in his notice to the taxpayer indicates the assessment is the result of the audit of the corporation and not the result of a separate audit of the McCormicks. Even if the assessment could be considered an "audit," we are not dealing with consecutive tax periods, but rather concurrent tax periods tied to the same operative facts. While the maxim may not apply in this case, such determination of applicability is deferred until resolution of the underlying case.

There is the final issue of disposition of this matter. The filing of a matter with the Tax Court places certain limitations on the Director's ability to collect the tax until the matter is completed. N.J.S.A. 54:51A-15 (staying certain collection activities until appeal is completed). While interests of fundamental fairness, substantial justice, and the legitimacy of the governmental process itself may dictate that the McCormicks would not be liable in the event that Charley O's prevails in the Sales and Use Tax and Corporation Business Tax litigation, the fact remains that the McCormicks did not timely file a protest. The court has no indication at this point of whether or not Charley O's will be a prevailing party. In the event that Charley O's is not a prevailing party, allowing this matter to remain active would result in the McCormicks obtaining the benefit of the stay of collection for which they are not entitled since they did not timely appeal.

At this juncture, the court is going to dismiss the McCormick's complaint as being untimely since it is uncontroverted that they did not timely appeal. Nevertheless, in the event that there is a final determination made by this court in the Charley O's matter that results in the taxpayer being a prevailing or partially prevailing party, the court, upon application, will reopen this matter pursuant to R. 4:50-1(f) so that the issue of whether estoppel should be applied is considered.[1]   Cf. Castiglioni v. Castiglioni, 192 N.J. Super. 594, 598 (Ch. Div. 1984)(change in federal law respecting military pension distributability undoing prior Supreme Court decision held to constitute a basis for subparagraph (f) relief.);  See also Edgerton v. Edgerton, 203 N.J. Super. 160, 170-71 (App. Div. 1985).

---

[1] If this matter resolves through settlement, there is the issue of the admissibility of the settlement amounts being used as evidence for or against either party.  Generally, settlement agreements are not admissible. N.J.R.E. 408.  In other words, the Director's or taxpayer's concession of a settlement amount is not the same as a determination by this court or another tribunal of the amount due.  For estoppel to apply and thereby foreclose relitigation of an issue, there must be a showing that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. First Union Nat. Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007).  If there is a settlement, there would not be a basis to reopen the Gross Income Tax case since there would not be any judicial determination.  In reaching any settlement, the parties should keep this in mind.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint is dismissed subject to reinstatement as set forth in the opinion.