**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0354-17T2

RICHARD J. BADOLATO,
COMMISSIONER, NEW
JERSEY DEPARTMENT
OF BANKING AND
INSURANCE,

      Petitioner-Respondent,

v.

PAUL J. VINCI,

      Respondent-Appellant.

_____

Argued January 22, 2019 – Decided March 1, 2019

Before Judges Sumners and Mitterhoff.

On appeal from the New Jersey Department of Banking and Insurance.

Thomas H. Prol argued the cause for appellant (Laddey, Clark & Ryan, LLP attorney; Thomas H. Prol, on the briefs).

Carl M. Bornmann, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorneys; Melissa H. Raksa, Assistant

Attorney General, of counsel; Carl M. Bornmann, on the brief).

PER CURIAM

Respondent Paul J. Vinci appeals a final agency decision of the Department of Banking and Insurance (the "Department") revoking his insurance producer license[1] and ordering that he pay fines totaling $7,500. The Commissioner of the Department found that respondent violated N.J.A.C. 11:17D-2.5(e) by working for a licensed insurance producer while his license was voluntarily suspended. On appeal, respondent contends that the orders of the Commissioner should be reversed because his employment during his license suspension did not violate the regulation. We disagree and affirm the Department's final decision for the reasons that follow.

Respondent was licensed as an insurance producer from May 2, 1990 until his license expired on April 30, 2006 in the State of New Jersey.[2] He has also been licensed to produce insurance in New York as a resident producer since August 2005. Prior to respondent's license expiring, he was convicted of cocaine

---

[1] 0A license is required before one can sell, solicit or negotiate insurance in this State. N.J.S.A. 17:22A-29.

[2] An insurance producer is a "person required to be licensed under the laws of this State to sell, solicit or negotiate insurance." N.J.S.A. 17:22A-28.

possession in 1999. He failed to disclose this conviction to the Department when it occurred and when he re-applied for his license in July 2007, after its expiration.

Respondent was hired as an insurance producer by Otterstedt Insurance Agency ("OIA") on September 2, 2008. OIA has been licensed as a resident business entity insurance producer in New Jersey with a business and mailing address in Englewood Cliffs since June 11, 1975.

From June 2006 through February 2007, while respondent's license was expired, he continued to sell, solicit, and negotiate New Jersey insurance policies, and received commissions for these activities. On March 29, 2012, respondent signed and entered into a consent order with the Department, admitting and accepting responsibility for violations of the New Jersey Insurance Producer Licensing Act, N.J.S.A. 17:22A-26 to -57. Respondent admitted that he continued engaging in insurance producer activities in New Jersey after his license expired, failed to notify the Commissioner within thirty days of a criminal conviction, and failed to report on a licensing application that he had been convicted of a crime. He agreed to pay a $15,000 fine and to have his New Jersey insurance producer license suspended for two-and-one-half years beginning on March 29, 2012.

On May 1, 2014, prior to the conclusion of respondent's suspension, respondent submitted an application for a nonresident insurance producer license that identified OIA as his employer. The Department rejected the application.

Thereafter, the Department began investigating respondent's employment. Lydia Barbara Bashwiner, Esq., OIA's counsel, stated in a letter to the Department that respondent's employment as an insurance producer with OIA began on September 2, 2008, and was terminated effective June 20, 2014. Bashwiner's letter also stated that respondent "did not conduct any New Jersey insurance business while employed at OIA," that "OIA did not maintain any offices outside of New Jersey" and that respondent "attended sales meetings, marketing meetings and other company functions at our New Jersey office." Respondent also "had access to OIA's computer network and insurance carrier interface systems."

After investigating respondent's employment, the Department issued a two-count order to show cause on July 1, 2015. The first count alleged that respondent continued to work at OIA despite having a suspended insurance producer license. The second count alleged that respondent continued to work

4

for an insurance producer despite having agreed to a thirty-month suspension of his insurance producer license pursuant to a consent order with the Department.

After hearing oral argument on the Department's motion for summary decision and respondent's cross-motion for summary decision, the Honorable Jeff S. Masin, A.L.J., issued an initial decision granting the Department's motion as to both counts and denying respondent's cross-motion. Judge Masin recommended a $5,000 penalty on the first count, a $10,000 penalty on the second count, and revocation of respondent's insurance producer license.

On August 11, 2017, the Commissioner issued a final decision and order, which adopted Judge Masin's initial decision with modifications. The Commissioner concluded that Vinci's employment with OIA during the term of his license suspension violated N.J.A.C. 11:17D-2.5(e), and N.J.S.A. 17:22A-40(a)(2) and (8). The Commissioner also adopted Judge Masin's recommendation to revoke respondent's insurance producer license, reduced the total recommended penalty to $7,500, and imposed costs of $637.50.

The Commissioner noted that respondent admitted to maintaining employment with OIA, a licensed resident insurance producer in New Jersey, during the time his producer license was suspended. The Commissioner found that, while respondent's employment was limited to New York insurance

matters, he was required to attend meetings at the New Jersey office and had access to OIA's computer network, which contained New Jersey insurance business.

The Commissioner rejected respondent's contention that the Department was overstepping its regulatory authority because respondent's employment with OIA involved New York insurance matters only. The Commissioner found that, under N.J.A.C. 11:17D-2.5(e), respondent was not allowed to be employed by an insurance producer licensed in New Jersey in any capacity, including any employment roles that are not related to the sale, solicitation, and negotiation of insurance, during the period of his suspension. Respondent was not prohibited from engaging in insurance business under his New York resident insurance producer license. During the suspension of his New Jersey license, respondent was free to maintain employment with an insurance producer in New York, or any other state where he may have been licensed, so long as the insurance producer was not also licensed in New Jersey. The Commissioner concluded that revocation of Vinci's insurance producer license was warranted for his repeated failure to abide by New Jersey insurance laws, which showed a purposeful disregard for these laws and the Department.

This appeal followed.

A-0354-17T2

On appeal, respondent contends that the Commissioner erred by granting summary decision to the Department.  Summary decision should be granted where

> the pleadings, discovery and affidavits "show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law."  Once the moving party presents sufficient evidence in support of the motion, the opposing party must proffer affidavits setting "forth specific facts showing that there is a genuine issue which can only be determined in an evidentiary proceeding."  This standard is substantially the same as that governing a motion under Rule 4:46–2 for summary judgment in civil litigation.
>
> [Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121-22 (App. Div. 1995) (citations omitted).]

We review motions for summary decision "in accordance with the principles set forth by the Supreme Court in Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)."  Nat'l Transfer, Inc. v. N.J. Dep't of Envtl. Prot., 347 N.J. Super. 401, 408 (App. Div. 2002).  In Brill, the Court explained that

> a determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party . . . .  The import of our holding is that when the evidence "is so one-sided that one party must prevail as

7

a matter of law," the trial court should not hesitate to grant summary judgment.

[142 N.J. at 540 (citations omitted).]

Respondent make two principal arguments regarding the Commissioner's grant of summary decision. First, respondent argues that the Commissioner's interpretation of N.J.A.C. 11:17D-2.5(e) was incorrect and leads to the absurd result "that one cannot even be a janitor at the regulated entity" while his insurance producer license is suspended. Second, respondent argues that Mayflower Sec. Co., Inc. v. Bureau of Sec. in Div. of Consumer Aff. of Dep't of L. and Pub. Safety, 64 N.J. 85 (1973) is analogous to the instant case and should act as controlling authority. We disagree with both arguments.

The Commissioner's power to revoke an insurance producer license comes from N.J.S.A. 17:22A-40, which provides, in relevant part:

> The commissioner may . . . revoke . . . an insurance producer's license or may levy a civil penalty . . . for any one or more of the following causes: . . .
>
> (2) Violating any insurance laws, or violating any regulation, subpoena or order of the commissioner or of another state's insurance regulator; . . .
>
> (8) Using fraudulent, coercive or dishonest practices, or demonstrating incompetence, untrustworthiness or financial irresponsibility in the conduct of insurance business in this State or elsewhere . . . .

[N.J.S.A. 17:22A-40(a)(2), (8).]

Additionally, "[n]o person whose license has been suspended or revoked may be a partner, officer, director or owner of a licensed business entity, or otherwise be employed in any capacity by an insurance producer." N.J.A.C. 11:17D-2.5(e) (emphasis added).

"The interpretation of regulations follows the principles of statutory interpretation." Campo Jersey, Inc. v. Dir., Div. of Taxation, 390 N.J. Super. 366, 381 (App. Div. 2007) (citing State v. Hessen, 145 N.J. 441, 456 (1996)). The first step in interpreting the statute is to look "to the plain language of the statute," and "ascribe to the statutory language its ordinary meaning." D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 119-20 (2007) (citations omitted). Our "goal in the interpretation of a statute is always to determine the Legislature's intent." Id. at 119 (citing Wollen v. Borough of Fort Lee, 27 N.J. 408, 418 (1958)). "Where a statute is clear and unambiguous on its face and admits of only one interpretation, a court must infer the Legislature's intent from the statute's plain meaning." O'Connell v. State, 171 N.J. 484, 488 (2002) (citing V.C. v. M.J.B., 163 N.J. 200, 217, cert. denied, 531 U.S. 926 (2000)).

The plain language of both N.J.S.A. 17:22A-40(a) and N.J.A.C. 11:17D-2.5(e) are clear and unambiguous. See D'Annunzio, 192 N.J. at 119-20;

9

O'Connell, 171 N.J. at 488. The Commissioner may revoke an insurance producer's license if he or she finds that the producer has violated an insurance law, regulation, or order of the Commissioner. N.J.S.A. 17:22A-40(a)(2). A person whose insurance producer's license has been suspended may not "be employed in any capacity by an insurance producer." N.J.A.C. 11:17D-2.5(e) (emphasis added). Here, respondent concedes that his license was suspended while he worked at OIA and that OIA is a resident business entity insurance producer in New Jersey. We find no merit in respondent's argument that his employment did not violate the regulation because it was limited to New York insurance matters. Under N.J.A.C. 11:17D-2.5(e), it makes no difference that respondent did not handle New Jersey insurance matters during his employment with OIA. The regulation is concerned only with whether respondent worked for an insurance producer registered in New Jersey during his suspension.

Furthermore, respondent's argument that Mayflower Securities should act as controlling authority in the instant matter is meritless. In Mayflower Securities, the Court vacated a twenty-day suspension imposed by the Bureau of Securities on Mayflower Securities' registration as a securities broker-dealer. 64 N.J. at 87, 99. The Bureau's suspension was based on findings that Mayflower Securities violated provisions of the Uniform Securities Law (1967), N.J.S.A.

10

49:3-47 to -83, by employing an unregistered agent. Id. at 87-88. Under the Uniform Securities Law, suspension or revocation required a finding that the broker-dealer "has willfully violated or willfully failed to comply with any provision of this act or any rule or order authorized by this act[.]" Id. at 90 (quoting N.J.S.A. 49:3-58(a)(2)(ii)).

The unregistered agent in Mayflower Securities, Alan Levine, completed his registration application and submitted it to a Mayflower Securities manager. Id. at 94. However, "[n]o one is certain what happened to Levine's application after he returned it . . . following completion." Id. at 95. The Court concluded that it was "clear that [Levine] thought he was registered and did business accordingly and that Mayflower thought he was registered and employed him accordingly." Ibid. Thus, the Court held that Mayflower's violation was technical, not willful, and vacated the twenty-day suspension. Id. at 99.

Mayflower Securities is factually distinct from the instant matter. The Uniform Securities Law in Mayflower Securities required a willful violation of law or regulation before one's securities broker license could be suspended. See id. at 90. There is no such requirement before one's insurance producer license can be suspended or revoked in the instant matter. See N.J.S.A. 17:22A-40(a)(2). Thus, unlike the Bureau of Securities in Mayflower Securities, the

Commissioner here was not required to find a willful violation of N.J.A.C. 11:17D-2.5(e) before revoking respondent's insurance producer license. See 64 N.J. at 90. Thus, we conclude that the Commissioner correctly interpreted N.J.A.C. 11:17D-2.5(e) and properly granted summary decision to the Department.

The remaining arguments raised by respondent are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0354-17T2